Robert W. Snelson, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

540

Argued October 10, 1985, before Judges CRAIG and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*James P. O'Connell,* with him, *Vicki L. Beatty,* for petitioner.

*Charles G. Hasson,* Acting Deputy Chief Counsel, with him, *Daniel T. Booth,* Legal Intern, for respondent.

OPINION BY JUDGE PALLADINO, December 18, 1985:

Robert W. Snelson (Claimant) appeals from an order of the Unemployment Compensation Board of Review (Board) denying unemployment compensation benefits to Claimant under Section 3 of the Unemployment Compensation Law[1] (Law) (declaration of public policy that benefits will be granted only to persons unemployed through no fault of their own). We affirm.

Claimant was employed as a housekeeper by the Gateway Rehabilitation Center (Employer), a drug and alcohol rehabilitation facility, where he worked for one year and three months until his last day of employment on December 9, 1983. On the evening of December 9, 1983, following work, Claimant and a co-worker spent time together socializing and drinking alcohol late into the night. At approximately 1:30 A.M., on the morning of December 10, 1983, Claimant and his co-worker, who were by that time both very intoxicated, got into a fight, during which Claimant fatally stabbed the co-worker. Claimant thereupon panicked, threw his knife away, and fled to the home of his girlfriend. He was arrested by the police and charged with criminal homicide. At the time of the unemployment compensation proceedings, however, no

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §752.

disposition of the criminal charges against him had yet been made.

Immediately following the incident, a local newspaper carried a report of the killing in which both Claimant and the victim were identified as employees of Employer. On December 13, 1983, Employer suspended Claimant from his job and, soon thereafter, Claimant was discharged because Employer considered him an unsuitable employee in light of the criminal charges pending against him. Claimant thereafter applied for unemployment compensation benefits, which were initially granted by the referee. The Board, however, while adopting the referee's findings of fact, relied on Section 3 of the Law in determining that Claimant was ineligible for benefits because his discharge was caused by his own fault.

On appeal to this Court, Claimant contends that the evidence does not establish that his conduct was inimical to accepted standards of behavior, nor does it show that his conduct directly reflected upon his ability to perform his assigned duties. Claimant concludes, therefore, that he cannot be precluded from benefits by reason of Section 3.

Initially, we note that our scope of review of this case is limited to determining whether or not the factual findings are supported by substantial evidence and whether or not an error of law has been committed. *Clark v. Unemployment Compensation Board of Review*, 80 Pa. Commonwealth Ct. 513, 517, 471 A.2d 1309, 1310 (1984).

It is well settled that Section 3 of the Law has substantive effect and application, and provides a ground for disqualification that is independent of those enumerated in Section 402 of the Law.[2] *Corbacio v. Unemployment Compensation Board of Review*, 78

---

[2] 43 P.S. §802.

Pa. Commonwealth Ct. 70, 74, 466 A.2d 1117, 1119 (1983).

This Court has held that:

In order to deny compensation under Section 3 of the [Law], more is needed than mere evidence of an *arrest* for a crime. The employer must present some evidence showing conduct of the claimant leading to the criminal arrest which is inconsistent with acceptable standards of behavior and which *directly* reflects upon his ability to perform his assigned duties. Of course, no proof of criminal conviction is necessary. . . . The employer need only produce evidence that would have established fault on the part of the employee which would be incompatible with his work responsibilities. (Citations omitted.) (Emphasis in original.)

*Unemployment Compensation Board of Review v. Derk*, 24 Pa. Commonwealth Ct. 54, 57, 353 A.2d 915, 917 (1976). The test we first enumerated in *Derk* thus possesses two prongs: an employer must show (1) that the claimant's conduct was contrary to acceptable standards of behavior, and (2) that the conduct in question directly reflects upon the claimant's ability to perform his assigned duties.

In the case at bar, a review of the record makes apparent the fact that there is substantial evidence to support the conclusion that the first prong of the *Derk* test has been met. The testimony of Claimant and his girlfriend establish that Claimant was very inebriated on the night in question, that he fought with his co-worker and that he stabbed the co-worker to death. No matter what the outcome of the criminal charges against Claimant, these facts clearly support a finding that Claimant's conduct was "inconsistent with acceptable standards of behavior."

Addressing the question of whether the second prong of the *Derk* test has been met, we begin by noting that, in our prior cases, we have examined a broad range of factors in determining whether a claimant's ability to do his job has been adversely affected by his conduct, and we have found that various factors may be dispositive of the question in a given case. In *Unemployment Compensation Board of Review v. Ostrander,* 21 Pa. Commonwealth Ct. 583, 347 A.2d 351 (1975), for example, a truck driver was discharged by his employer after he pled guilty to a charge of conspiracy to interfere with the civil rights of a fellow truck driver. The charge arose from an incident which occurred during a strike when the claimant, in an apparent state of intoxication, joined a group of men who threw rocks at passing trucks and killed a truck driver. We held that the criminal conviction in that case was of a sufficiently serious nature, in and of itself, to support the allegation that the claimant was indeed at fault for Section 3 purposes.

Also, in *D'Iorio v. Unemployment Compensation Board of Review,* 42 Pa. Commonwealth Ct. 443, 400 A.2d 1347 (1979), we held that a police detective who socialized with known felons was at fault, for Section 3 purposes, because his conduct was incompatible with his work responsibilities. Dispositive of the question of fault in that case was the fact that the claimant's associations had "severely compromised the investigative efficiency of the office which is built in large measure in trust and cooperation between the various law enforcement agencies, all of which had knowledge of [the claimant's] associations." *D'Iorio,* 42 Pa. Commonwealth Ct. at 446, 400 A.2d at 1349. As our holding in *D'Iorio* indicates, in determining whether the second prong of the *Derk* test has been met, it is

proper to consider the effect a claimant's faulty conduct may have on an employer who happens to be particularly susceptible to the adverse effects of such conduct.

Moreover, in the recent case of *Sheaffer v. Unemployment Compensation Board of Review,* 92 Pa. Commonwealth Ct. 431, 499 A.2d 1121 (1985), we stated that a number of factors should be considered in determining if a claimant's conduct directly reflects upon his ability to do his job. Importantly, we noted that factors relevant to this determination include the specific nature of the offense committed by the claimant and *any circumstances* which may particularly affect the claimant's ability to do his job.

As the above cases indicate, no single factor is necessarily dispositive of the issue of whether a claimant's conduct reflects adversely on his fitness to do his job. Rather, if an examination of all relevant circumstances, including especially the nature of the conduct in question, leads to the conclusion that a claimant's conduct is incompatible with his job responsibilities, then the second prong of the *Derk* test is satisfied. While a consideration of a claimant's specifically assigned duties may be relevant to this determination, if it is otherwise apparent that the claimant's conduct was inimical to the interests of his employer, it is not necessary for an employer to present into evidence a description of a claimant's specific duties.

In the case at bar, no showing was made as to what the specifically assigned duties of Claimant were in his capacity as a housekeeper. The Board, however, specifically considered the very serious nature of the Claimant's faulty conduct, the fact that the victim was the Claimant's co-worker, and the particular circumstance that the Claimant was intoxicated when he committed the offense and that he worked for a drug and alcohol rehabilitation center.

Having thoroughly reviewed the record, we agree with the Board's determination that the above-mentioned factors provide sufficient evidence to establish that the claimant's conduct is incompatible with his work responsibilities. Because both prongs of the *Derk* test have thus been met, Claimant is at fault, for Section 3 purposes, and must be denied benefits. Accordingly, we affirm the decision and order of the Board.

ORDER

AND Now, December 18, 1985, the decision and order of the Unemployment Compensation Board of Review at No. B-231510, dated June 8, 1984, is affirmed.

---

DISSENTING OPINION BY JUDGE CRAIG:

The majority opinion acknowledges that:

In the case at bar, no showing was made as to what the specifically assigned duties of claimant were in his capacity as a housekeeper.

Hence, this case lacks the necessary basis for the majority's holding that the evidence established the claimant's conduct to be "incompatible with his work responsibilities."

The decision should be to remand the case for findings as to the nature of the claimant's work responsibilities and the relationship, if any, of his external conduct to those work responsibilities. *Clark v. Unemployment Compensation Board of Review,* 80 Pa. Commonwealth Ct. 513, 471 A.2d 1309 (1984).