528 A.2d 1057

Andrea L. Masom, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs November 17, 1986 to Judges BARRY and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Frayda Kamber,* for petitioner.

*James K. Bradley,* Associate Counsel, with him, *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE PALLADINO, July 23, 1987:

Andrea L. Masom (Petitioner) appeals from an order of the Unemployment Compensation Board of Review (Board) denying unemployment compensation benefits to Petitioner under Section 3 of the Unemployment Compensation Law[1] (Law) (declaration of public policy that benefits will be granted only to persons unemployed through no fault of their own).

Petitioner was employed by the Snyder/Union Office of Human Resources (Employer) on May 1, 1983. Initially, Petitioner was hired for a temporary position; however, she began full-time work as an Employment Specialist in June, 1983. Petitioner was given notice of her termination on February 9, 1984, as a result of her

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §752.

guilty plea to a charge of drug possession. Petitioner's last day of work was March 30, 1984.

Petitioner filed an application for unemployment compensation benefits on April 1, 1984, which was denied by the Office of Employment Security (OES) pursuant to Section 402(e)[2] of the Law. Petitioner appealed and a hearing was held before a referee who affirmed OES's denial of benefits but held that denial was more properly based upon Section 3 of the Law. Petitioner appealed to the Board which, on July 9, 1984, affirmed the referee's order.

The following are the pertinent facts as found by the referee:

3. Specifically, on September 30, 1983, the claimant was arrested for drug possession and intent to sell, which arrest was prominently publicized in the local newspapers.

4. The employer, feeling the publicity was negative to a great degree and feeling that it could reflect on the employer, discussed the situation with the claimant and agreed to allow her to continue her employment until she was either found guilty or not guilty of the charges against her, at which time they would take whatever action they felt appropriate.

5. On February 9, 1984, the claimant entered a plea of guilty in Common Pleas Court to a charge of a misdemeanor and was thereafter placed on one-year probation by the Court.

6. Claimant's immediate supervisor, the Executive Director, advised the claimant that the Commissioners of the two counties had voted to dismiss her for her plea of guilty which they felt was tantamount to a conviction; however, she

---

[2] 43 P.S. §802(e) (willful misconduct).

could continue to work until a suitable replacement was found and trained and thereby the claimant continued to work until and including March 30, 1984.

7. The incident for which the claimant was arrested occurred on March 9, 1983, sometime prior to the claimant's beginning date of employment with the subject employer; however, due to the undercover nature of the investigation, she was not arrested until September 30, 1983.

8. While the employer considered the claimant to be a valued employee who very capably performed her duties, nevertheless, due to her plea of guilty on February 9, 1984 in Common Pleas Court, the employer, considering all factors, including the type of work performed by the claimant and the individuals with whom she came in contact, selected her effective date of discharge as of the day that they found a suitable replacement that had been afforded some training and the final date of employment for the claimant turned out to be March 30, 1984.

On appeal to this court, Petitioner asserts that the Board erred as a matter of law in denying benefits to Petitioner because there was no showing that her non-work related criminal conduct materially affected her employment. In addition, Petitioner asserts that the order of the Board is not based upon substantial evidence.

Our scope of review of this case is limited to determining whether the factual findings are supported by substantial evidence and whether an error of law has been committed. *Snelson v. Unemployment Compensation Board of Review*, 93 Pa. Commonwealth Ct. 539, 502 A.2d 734 (1985). In *Snelson*, we held that in order to deny compensation under Section 3 of the Law, an employer must show "(1) that the claimant's conduct was

contrary to acceptable standards of behavior, and (2) that the conduct in question directly reflects upon the claimant's ability to perform his assigned duties." *Id.* at 543, 502 A.2d at 736. In the case at bar, a review of the record supports the conclusion that Petitioner's guilty plea to possession of narcotics constitutes conduct "contrary to acceptable standards of behavior."

Petitioner asserts, however, that the second requirement necessary to deny compensation under Section 3 has not been met by the Employer, and, therefore, the Board erred as a matter of law in affirming a denial of benefits. In determining whether the second prong of this test is met, a number of factors should be considered as to whether a claimant's conduct directly reflects upon her ability to do her job. These factors include the assigned job duties of a claimant, the criminal offense involved, the employer's need to trust the employee, and other circumstances that prove relevant to a particular case. *Sheaffer v. Unemployment Compensation Board of Review,* 92 Pa. Commonwealth Ct. 431, 499 A.2d 1121 (1985).

At the hearing before the referee, Petitioner, in the case at bar, described her duties as follows:

> OK, I ran an employment readiness program. I did locational, [sic] testing and taught mostly welfare recipients, low income people, how to fill out applications for employment, how to write resumes and taught the others how to sit for interviews for employment and basically career counselling.

N.T. at 18. The referee found that the employer, "considering all factors, including type of work performed by the claimant and the individuals with whom she came in contact", discharged Petitioner upon her pleas of guilty to possession of narcotics. It is clear from Petitioner's testimony that she was in a position of trust with

her employer and worked directly with the public as a representative for her employer. We conclude that Petitioner's guilty plea to a crime, such as possession of narcotics directly reflects upon her ability to perform her duties as an Employment Specialist. Therefore, the Board did not err as a matter of law in denying benefits to Petitioner under Section 3 of the Law.[3]

Petitioner next asserts that the order of the Board was not supported by substantial evidence which objectively shows that Petitioner's non-work related conduct adversely affected her ability to perform her duties. However, in *Snelson,* we held that:

> [N]o single factor is necessarily dispositive of the issue of whether a claimant's conduct reflects adversely on his fitness to do his job. Rather, if an examination of all relevant circumstances, including especially the nature of the conduct in question, leads to the conclusion that a claimant's conduct is incompatible with his job responsibilities, then the second prong of the *Derk*[4] test is satisfied. While a consideration of a claimant's specifically assigned duties may be relevant to this determination, if it is otherwise apparent that the claimant's conduct was inimical to the interests of his employer, it is not necessary for an employer to present into evidence a description of a claimant's specific duties.

*Snelson,* 93 Pa. Commonwealth Ct. at 545, 502 A.2d at 737.

---

[3] Petitioner also asserts that the Board erred as a matter of law because the off-duty act leading to her guilty plea occurred prior to her employment with the Employer. This, however, is of no consequence because Petitioner pled guilty to the crime while working for the Employer.

[4] *Unemployment Compensation Board of Review v. Derk,* 24 Pa. Commonwealth Ct. 54, 353 A.2d 915 (1976).

Petitioner was in a position of trust and had extensive contact with the public. Considering all of the factors, it is apparent that her conduct was inimical to the interests of her employer. Specifically, the Employer testified that following Petitioner's arrest her job duties were changed because of adverse publicity surrounding the incident:

> OK, ah, Miss Masom was arrested on charges of, correct me if this [sic] is drug possession with an intent to sell, as the charge at that time.
>
> . . .
>
> I am not supposed . . . she was arrested at that time and her picture appeared on the front page of the newspaper. There was part of a big drug bust then at that time. Ah, she called me the day it happened, as soon as she was able to, to tell me what had happened. And, ah, obviously, didn't come to work that day and all of that. Ah, I informed, because we are an arm of county government, my agency is, I informed the County Commissioners, since it could have implications, you know, for the county, and I felt they should know. Ah, following that, I had meetings with the Commissioners. . . .
>
> Was she still working though?
>
> She was still on [sic] our employ, yes.
>
> The claimant was still working, she was suspended?
>
> No, she wasn't. Ah, we had discussed it, ah, I discussed it with the Commissioners on the phone and in person, at Commissioner meetings and it was decided, it was felt that a person is innocent until proven guilty under our system.
>
> . . .
>
> Allright, isn't it true she was not suspended at that time, at the time the publicity occurred,

she was not taken off jobs, she was still permitted to work with clients? No change in duties? Well, she, there was a, she did not work with clients in quite the same capacity until things settled down a little bit. We did not feel that that would be helpful. We put her on other job duties.

N.T. at 7, 11. Another Employer witness testified to other impacts of Petitioner's conduct on its interests:

We believe there was a reflection, yes, on the Office and we had also been informed by, I think, our probation officer that the County had provided money to drug and alcohol for the purpose of nabbing drug dealings in the area. And the County had participated in a contribution and we felt that after we had contributed to law enforcement agencies with money to enhance or to try to locate drug movement in the area, we could hardly condone an employee of the County, or the arm of the County, dealing with it after we had already given money to the enforcement of this area, or matter, whatever.

N.T. at 14.

In light of the aforementioned testimony, there is substantial evidence to support the conclusion that Petitioner's conduct was inimical to the interests of her employer and incompatible with her job responsibilities. Therefore Petitioner cannot be said to be unemployed "through no fault of her own" within the meaning of Section 3 of the Law.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, July 23, 1987, the decision of the Unemployment Compensation Board of Review, in the above-captioned case is affirmed.