550 A.2d 287

Wadell Atkins, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs September 13, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Joseph N. Bifano,* for petitioner.

No appearance for respondent.

*C. Robert Keenan, III, Jones, Gregg, Creehan & Gerace,* for intervenor, Westinghouse Electric Corp.

OPINION BY JUDGE PALLADINO, November 16, 1988:

Wadell Atkins (Petitioner) appeals an order of the Unemployment Compensation Board of Review (Board) affirming the decision of a referee to deny Petitioner benefits under section 3 of the Unemployment Com-

pensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §752.[1] For the reasons set forth below, we reverse.

Petitioner was employed as a mechanic by Westinghouse Electric Corporation (Employer) and worked in Employer's Bettis Atomic Power Laboratory. The referee found that all employees at the lab had to be given security clearance by the United States Department of Energy (DOE). On June 2, 1986, Employer terminated Petitioner from his employment after it was notified by DOE that Petitioner's security clearance had been revoked. Although Petitioner's last day of work was June 2, 1986, Employer testified that Petitioner continued to receive his salary until February 27, 1987 while DOE was conducting a further investigation.

Petitioner filed an application for unemployment compensation benefits on March 1, 1987, alleging a lack of work. The Office of Employment Security (OES) denied the claim under section 3 of the Law. Petitioner appealed this determination and a hearing was then held before a referee. The referee also denied benefits pursuant to section 3, finding that Petitioner's loss of security clearance, for reasons not connected with his employment, precluded his continuing his employment

---

[1] Section 3 provides in pertinent part:

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employees during periods when they become unemployed through no fault of their own.

43 P.S. §752.

with Employer. Without taking additional evidence, the Board affirmed the decision of the referee by order dated May 8, 1987.

On appeal to this court,[2] Petitioner asserts that the Board erred as a matter of law in finding him ineligible for benefits solely because he lost his security clearance. Further, Petitioner argues that the Board erred in determining that security clearance was required for employment in all of Employer's subdivisions. Employer contends that the Board's decision was proper and, in the alternative, that Petitioner's claim for benefits is preempted by federal law.

As noted above, benefits may be denied under section 3 when an employee becomes unemployed through his own fault. In a section 3 case, the employer bears the burden of proving that an employee's non-work related conduct was contrary to acceptable standards of behavior and that the conduct in question directly reflects upon the employee's ability to perform his job. *Masom v. Unemployment Compensation Board of Review*, 107 Pa. Commonwealth Ct. 616, 528 A.2d 1057 (1987); *Snelson v. Unemployment Compensation Board of Review*, 93 Pa. Commonwealth Ct. 539, 502 A.2d 734 (1985).

This court has considered analogous cases where an employee has suffered revocation of a governmental privilege which is a pre-condition to continued employment. For example, we have addressed the issue of whether an employee's loss of a driver's license and subsequent discharge from employment can support a denial of benefits under section 3 of the Law, where the

---

[2] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, constitutional rights were violated, or an error of law was committed. *Emery Worldwide v. Unemployment Compensation Board of Review*, 115 Pa. Commonwealth Ct. 554, 540 A.2d 988 (1988).

license is required for continued employment. We have held that an employee is not entitled to benefits where the loss of his driver's license and, hence, his unemployment were the result of a traffic violation. *Corbacio v. Unemployment Compensation Board of Review*, 78 Pa. Commonwealth Ct. 70, 466 A.2d 1117 (1983) (speeding); *Huff v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 11, 396 A.2d 94 (1979), *aff'd per curiam*, 487 Pa. 448, 409 A.2d 854 (1980) (driving under the influence of intoxicants). *See also Varmecky v. Unemployment Compensation Board of Review*, 60 Pa. Commonwealth Ct. 640, 432 A.2d 635 (1981) (employee's federal driving privilege revoked after his involvement in three accidents while operating U.S. Postal Service vehicles and employee admitted responsibility for one of the accidents sufficient to warrant denial of benefits under section 3).

Similarly, we have found an employee ineligible for benefits under section 3 where the employee lost his driver's license for failing to pay a judgment entered against him in a civil action. *Strokes v. Unemployment Compensation Board of Review*, 29 Pa. Commonwealth Ct. 584, 372 A.2d 485 (1977), *aff'd per curiam*, 487 Pa. 448, 409 A.2d 854 (1980). In contrast, we reversed a denial of benefits under section 3 where an employee's loss of his driver's license was not through his own fault but was the result of an administrative recordkeeping error. *Miles v. Unemployment Compensation Board of Review*, 86 Pa. Commonwealth Ct. 186, 484 A.2d 418 (1984).

Thus, as the above cases illustrate, an employer must establish some fault on the part of an employee which renders the employee's unemployment "voluntary" under the Law.[3] In this case, Employer testified at

---

[3] The Pennsylvania Supreme Court has held that fault involves a voluntary act to which blame attaches and connotes some causal

the hearing before the referee that it did not know the reason(s) behind the revocation of Petitioner's security clearance, explaining that this was a matter between DOE and Petitioner. N.T. at 2-3. Petitioner testified that he was not advised by DOE as to why his clearance was revoked but stated that DOE did inform him that it was still investigating his case. N.T. at 3-4.[4]

The evidence presented by Employer is insufficient as a matter of law to meet its burden of proof under section 3. Although Employer could not retain Petitioner in his position once his security clearance was revoked,[5] this does not necessarily mean that Petitioner's unemployment is through his own fault or voluntary. While we recognize that the information upon which DOE relies in revoking a security clearance may not always be accessible to an employer *or* an employee, given DOE's regulation of security at nuclear facilities, we cannot conclude that, in all cases involving revocation of a security clearance, an employer will be unable to meet its burden of proof under section 3. This court is bound by the clear language of the Law which requires some showing of fault on the part of an em-

---

connection between a claimant's voluntary action and his subsequent unemployment. *Jones v. Unemployment Compensation Board of Review,* 513 Pa. 45, 518 A.2d 1150 (1986).

[4] In their respective briefs, both Petitioner and Employer allude to the possible reasons underlying the revocation of Petitioner's security clearance. However, this information is not contained in the record developed before the referee and the Board and we therefore cannot consider it. Pa. R.A.P. 1551.

[5] Petitioner argues in his brief that the Board erred in concluding that security clearance was required for employment in *all* of Employer's subdivisions. However, because we conclude that Employer failed to meet its burden of proving that Petitioner was unemployed through his own fault, we need not address this allegation of error.

ployee in order to disqualify that employee from receiving benefits.[6]

Employer argues that Petitioner's claim for benefits is preempted by federal law. We disagree. The parties do not dispute that an employee's qualification for a security clearance at a nuclear facility is governed by DOE regulations. Further, an employer which contracts with DOE must certainly comply with DOE's determinations as to an employee's qualifications and cannot retain an employee who lacks the proper clearance. The revocation of a security clearance pursuant to federal law does not necessarily answer the question of whether the employee is entitled to unemployment benefits under state law. An award of unemployment compensation benefits to an employee whose security clearance has been revoked does *not* reinstate the employee to his former position in violation of DOE's determination, but merely compensates him when his resulting unemployment is found to be "involuntary" under state law. Thus, the award is not tantamount to establishing a state law standard for continued employment at a nuclear facility which conflicts with federal standards. *See Burns International Security Services, Inc. v. Pennsylvania Human Relations Commission,* 119 Pa. Commonwealth Ct. 418, 547 A.2d 818 (1988).

Because we conclude that Employer failed to meet its burden of proving that Petitioner's unemployment was through his own fault, the Board erred in denying benefits.

Accordingly, we reverse.

---

[6] We note that, under the fault overpayment provisions of the Law, the Bureau of Employment Security may deduct from future unemployment compensation benefits payable to an employee past benefits which the employee has received but to which he was not entitled, if the employee received those benefits not through his own fault. 43 P.S. §874.

## ORDER

AND NOW, November 16, 1988, the order of the Unemployment Compensation Board of Review in the above-captioned matter is reversed.

Judge MACPHAIL did not participate in the decision in this case.