558 A.2d 936

**Charles A. MONTELLANICO, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 24, 1989.

Decided May 24, 1989.

Edward A. Mihalik, Aliquippa, for petitioner.

Clifford F. Blaze, Deputy Chief Counsel, James K. Bradley, Asst. Counsel, Harrisburg, for respondent.

Before CRAIG and BARRY, JJ., and BLATT, Senior Judge.

CRAIG, Judge.

Claimant, Charles A. Montellanico, appeals from an order of the Unemployment Compensation Board of Review denying him benefits under section 3 of the Pennsylvania Unemployment Compensation Law,[1] the benefits disqualification which applies when unemployment results from a claimant's own fault.

The claimant had worked for H.H. Robertson Co. since October 1, 1962. His final position with the company before his discharge was as supervisor of personnel/hourly workers. He was also employed as treasurer of the H.H. Robertson Credit Union, an employees' federal credit union sponsored by the employer. However, the employer's only connection with the credit union consisted of making payroll deductions from employees' checks and paying that money into the credit union fund. The employer does not operate the credit union, nor does it have any liability or responsibility for the credit union. Members of the credit union include union employees, non-union employees, salaried employees, retirees, and families of credit union members.

On May 20, 1987, the claimant turned himself into federal authorities, "for some discrepancies in the credit union", consisting of "fictitious loans." Claimant admitted to federal authorities his practice of making fictitious loans and improper receipt of funds.

On June 9, 1987, the employer learned from federal authorities that an investigation was underway involving these discrepancies. The employer met with the claimant that day and suspended him from work for an indefinite

1. Section 3 of the Pennsylvania Unemployment Compensation Act, Act of December 5, 1937, P.L. 2897, 43 P.S. § 752.

period without pay. October 30, 1987, the employer discharged the claimant from employment.

Initially, the board reversed the referee's decision that the claimant was ineligible for unemployment compensation benefits under section 3. The board stated that there had been no finding of wrongdoing within or without the credit union function; hence, there was no wrongdoing in connection with work that would give rise to either the willful misconduct disqualification or the section 3 fault disqualification.

On appeal, the board reconsidered its decision, on the basis that it had erred in not noting that the claimant had admitted to federal authorities that he had engaged in illegal activities. The board concluded that these activities were directly related to the claimant's abilities to carry out his duties as a supervisor for H.H. Robertson and that the claimant was therefore ineligible for benefits under section 3 of the Law. Claimant then appealed to this court.

The court's scope of review in this case is limited to determining whether or not the factual findings are supported by substantial evidence and whether or not a error of law has been committed. *Clark v. Unemployment Compensation Board of Review*, 80 Pa.Commonwealth Ct. 513, 517, 471 A.2d 1309, 1310 (1984).

The issue before this court is whether the board correctly concluded that the claimant's termination resulted from his own fault and thus should be grounds for denial under section 3 of the Unemployment Compensation Law.

To determine whether the board's decision was correct, we must first look to the legislative policy for enacting the Unemployment Compensation Law set forth in section 3, 43 P.S. § 752.

Section 3 of the Unemployment Compensation Law provides:

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its

resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employees during periods when they become unemployed *through no fault of their own.* The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth requires the exercise of police power of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed *through no fault of their own.*

█ Both the claimant and the board submit that the test applicable to this action is that one established by this court in *Unemployment Compensation Board of Review v. Derk,* 24 Pa.Commonwealth Ct. 54, 353 A.2d 915 (1976). In that case, the claimant was suspended from his job as a school bus driver when his employer was notified that he had been arrested by local law enforcement officials on an unspecified morals charge. The court set forth a burden of proof that had to be satisfied by the employer before the employee could be denied unemployment compensation benefits under § 3. The court stated, "the employer must present some evidence showing conduct of the claimant leading to the criminal arrest which is inconsistent with acceptable standards of behavior and which *directly* reflects upon his ability to perform his assigned duties." *Derk,* 24 Pa.Commonwealth Ct. at 57, 353 A.2d at 917. The court remanded the case to the board to reconsider the decision based on the test established.

In applying the first prong of the *Derk* test to the present case, the board found that there was evidence showing that the claimant's conduct which led to the criminal arrest was inconsistent with acceptable standards of behavior. Claimant admitted to federal authorities that he had made fictitious loans and had improperly used funds. The admission of the claimant that he had indeed acted in a manner contrary to acceptable standards of behavior satisfied the first prong of the *Derk* test.

The second prong of the *Derk* test requires that the conduct of the claimant be such as to directly reflect upon his ability to perform his assigned duties. The claimant argues that his conduct was not at all related to his position as supervisor of personnel/hourly workers at H.H. Robertson. He emphasizes the fact that H.H. Robertson was involved in the credit union only as a sponsor.

Although the court in *Derk* did not specify what factors are to be considered when applying the second prong of its test, recent decisions have articulated a list of factors to be considered when applying this prong of the test.

In *Sheaffer v. Unemployment Compensation Board of Review* 92 Pa.Commonwealth Ct. 431, 499 A.2d 1121 (1985), the claimant, who had been employed by a company for a year and three months, was arrested and charged with burglary and theft. The incident did not take place on the employer's property; however, the claimant admitted to his employer that he was guilty of theft and was discharged. The court considered a number of factors in determining whether the claimant's criminal conduct directly reflected upon his ability to perform assigned duties. According to the court, those factors included

(a) the nature of the Claimant's assigned duties;

(b) the specific nature of the offense committed by the Claimant;

(c) whether Claimant's job required any special degree of trust on the part of the Employer, considering particularly, whether Claimant works with items of value and

whether he is normally under the direct supervision of Employer; and,

(d) any other circumstances which may particularly affect Claimant's ability to do his job, including whether the crime occurred on or off Employer's premises, and whether or not it involved any of Employer's other workers or clients.

*Sheaffer*, 92 Pa. Commonwealth Ct. at 436, 499 A.2d at 1123, 1124.

This court in *Snelson v. Unemployment Compensation Board of Review*, 93 Pa.Commonwealth Ct. 539, 502 A.2d 734 (1985), gave special consideration to the nature of the conduct in question. In *Snelson*, the claimant, an employee at a drug and alcohol rehabilitation center, was arrested and charged with criminal homicide. The claimant and a co-worker had been drinking together one night when a fight broke out between them. During the fight, the claimant fatally stabbed the co-worker. The employer suspended the claimant and later discharged him because he was considered an unsuitable employee in light of the criminal charges pending against him.

The court stated that:

[N]o single factor is necessarily dispositive of the issue of whether a claimant's conduct reflects adversely on his fitness to do his job. Rather, if an examination of all relevant circumstances, including especially the nature of the conduct in question, leads to the conclusion that a claimant's conduct is incompatible with his job responsibilities, then the second prong of the *Derk* test is satisfied.

*Snelson*, 93 Pa.Commonwealth Ct. at 545, 502 A.2d at 737.

■ Applying the factors set forth in *Sheaffer* and *Snelson* to this case, we conclude that the board correctly decided that the claimant's conduct at the credit union was directly related to his ability to perform his assigned duties; hence, the second prong of the *Derk* test has been satisfied.

The claimant's responsibilities with the H.H. Robertson Co. included the processing of numerous claim forms, the

formulation of weekly work schedules for hourly workers, and at times, the signing of supplemental unemployment benefit checks. He was also responsible for whatever might happen in the realm of personnel. (Testimony of Robert Lamb, Manager of Industrial Relations of H.H. Robertson—See RR 7a). This testimony indicated that the claimant's duties required him to be in constant contact with other employees, many of whom were members at the credit union. The claimant, by the nature of his work as a supervisor, needed to have a relationship of trust between himself and the other employees. His wrongful conduct necessarily threatened that relationship, if it did not destroy it altogether.

Therefore, we hold that the board did not err in concluding that the claimant had engaged in acts that were sufficiently related to his duties with the employer to require denial of benefits under § 3 of the Act.

The order of the Board of Review is affirmed.

### ORDER

NOW, May 24, 1989, the order of the Unemployment Compensation Board of Review at No. B–265152–B, dated September 26, 1988, is affirmed.