IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lower Paxton Township,                     :
                              Petitioner   :
                                           :
              v.                           :
                                           :
Unemployment Compensation                  :
Board of Review,                           :   No. 857 C.D. 2016
                              Respondent   :   Submitted: December 16, 2016


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI,  Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: April 3, 2017


          Lower Paxton Township (Township/Employer) petitions this Court for
review of the Unemployment Compensation (UC) Board of Review's (UCBR) April
28, 2016 order reversing the Referee's decision, and granting Matthew M. Miller
(Claimant) UC benefits under Sections 3 and 402(e) of the UC Law (Law).[1]  The sole
issue before the Court is whether the UCBR erred by finding Claimant eligible for
UC benefits under Section 3 of the Law.[2]  After review, we reverse.

          Claimant was employed as a full-time engineering field technician from
May 2005 through October 15, 2015.  Employer has a policy that states falsification

_____

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 752
(public policy - UC benefits for persons unemployed through no fault of their own), 802(e)
(referring to willful misconduct).

[2] Although Employer's Petition for Review states an issue regarding Claimant's eligibility
for UC benefits under Section 402(e) of the Law, said argument is not contained anywhere in
Employer's brief.  Thus, that issue is waived.  *See Jimoh v. Unemployment Comp. Bd. of Review,*
902 A.2d 608, 611 (Pa. Cmwlth. 2006) ("[W]hen a party appeals, but fails to address an issue in the
brief, the issue is waived. . . .  This Court . . . [has] held that an issue raised in the Petition for
Review but not addressed in the petitioner's brief on appeal, was waived[.]").

of records is grounds for disciplinary action. Claimant was aware of that policy. On September 14, 2015, Claimant advised Employer that he was having a rough morning and, thus, taking personal time. On September 26, 2015, Claimant submitted his time sheet, on which he recorded regular work hours for September 14, 2015, instead of personal time. As a result thereof, Employer began an investigation of Claimant's attendance history and time sheets.

On September 28, 2015, the local police department informed Employer that Claimant had allegedly driven over and damaged the hydroseed on a Township Authority (Authority) right-of-way and left twelve inch ruts on the property. Employer suspended Claimant without pay pending an investigation of the alleged criminal activity related to the damage on the Authority's right-of-way. During a Loudermill[3] hearing related to Claimant's attendance issues, he admitted that he went onto the Authority's right-of-way in the evening, during non-work hours in his private vehicle. Claimant stated that he was hauling a trailer and attempting to obtain fire wood. He reported that while there he noticed the area was hydroseeded but continued to drive across it nonetheless. Claimant acknowledged that his truck became stuck and imbedded in the mud causing significant damage to the right-of-way and the hydroseed. Claimant explained that he walked about a quarter mile to the area where the Township stored its equipment and used a universal Caterpillar key to start a Township contractor's backhoe and convert it to his own use by driving it out of the storage area, onto a public road and then onto the right-of-way to pull his truck out of the mud.

Claimant did not have authorization from the contractor to use his backhoe or permission from the Township or the Authority to enter the property.

---

[3] In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the Supreme Court held that since a public employee has a property interest in his employment, under the United States Constitution's Due Process Clause, the employee must be afforded at least notice and a hearing before that employment is terminated.

Claimant left the property without telling anyone thereafter what had happened. On October 7, 2015, Employer concluded its investigation. Employer discharged Claimant for absence without leave and falsification of reports, violation of Administrative Policy - Conduct Unbecoming of a Township Employee and criminal activity - violations of the Crimes Code[4] and the Vehicle Code.[5]

Claimant applied for UC benefits. On November 10, 2015, the Altoona UC Service Center found Claimant ineligible for UC benefits under Section 402(e) of the Law. Claimant appealed and a Referee hearing was held. On December 16, 2015, the Referee affirmed the UC Service Center's determination. Claimant appealed to the UCBR. On February 2, 2016, the UCBR affirmed the Referee's decision. By February 8, 2016 letter, Claimant requested that the UCBR decision be rescinded as being prematurely issued.[6] On February 12, 2016, the UCBR issued an order vacating its February 2, 2016 decision because it was issued prematurely. On March 3, 2016, the UCBR remanded the matter to a Referee to obtain further testimony and evidence under Section 3 of the Law. On April 28, 2016, the UCBR reversed the Referee's December 16, 2015 decision and granted Claimant UC benefits under Sections 3 and 401(e) of the Law. Employer appealed to this Court.[7]

Employer argues that the UCBR erred by determining that it did not present sufficient evidence to establish that Claimant engaged in willful misconduct under Section 3 of the Law where Employer met both prongs of the test established in

[4] 18 Pa.C.S. §§ 101-9546.

[5] 75 Pa.C.S. §§ 101-9805.

[6] Claimant averred that the UCBR's decision was premature because he had requested a transcript of the hearing and the exhibits, as well as an opportunity to file a brief, none of which the UCBR addressed.

[7] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

3

*Unemployment Compensation Board of Review v. Derk,* 353 A.2d 915 (Pa. Cmwlth. 1976).  We agree.

> Initially, Section 3 of the Law provides:
>
> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth.  Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance.  Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own.  The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency.  The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this [A]ct for the compulsory setting aside of unemployment reserves to be used for the benefit of persons **unemployed through no fault of their own**.

43 P.S. § 752 (emphasis added).

> To deny a claimant benefits under Section 3 of the Law, the employer must satisfy a two-prong test enunciated in [*Derk*].  The employer must establish that the claimant's conduct was contrary to acceptable standards of behavior and that the conduct in question directly reflects upon the claimant's ability to perform his or her assigned duties.

*Hawkins v. Unemployment Comp. Bd. of Review,* 695 A.2d 963, 965 (Pa. Cmwlth. 1997).  Whether a claimant's conduct is sufficient to make him ineligible for benefits under Section 3 of the Law is a question of law subject to this Court's review.

4

*Horsefield v. Unemployment Comp. Bd. of Review,* 531 A.2d 829 (Pa. Cmwlth. 1987).

Employer asserts that it established the first prong because "Claimant's conduct in entering Authority property without permission and causing substantial damage, as well as converting a backhoe owned by [M.F. Ronca (]Contractor[)] to his own use without [] Contractor's permission constitutes conduct that is contrary to acceptable standards of behavior." Employer Br. at 12. In addition, Employer contends that Claimant's conduct constituted violations of the Crimes Code[8] and the Vehicle Code.[9]

Further, Employer maintains that "the testimony offered with regard to the second prong . . . constitutes substantial evidence that Claimant's conduct had a direct effect on his ability to perform his job duties[.]" Employer Br. at 14.

This Court has held: "Where an employer seeks to deny a discharged employee [UC] benefits *pursuant to Section 3* of the Law, the employer bears the burden of showing that the alleged misconduct directly affects an employee's ability to perform his or her assigned duties." *Maskerines v. Unemployment Comp. Bd. of Review,* 13 A.3d 553, 556-57 (Pa. Cmwlth. 2011) (footnote omitted).

> In determining whether Claimant's behavior directly affected his ability to perform his job duties, the [UCBR] should make specific findings on the following: (1) the nature of Claimant's assigned duties; (2) the specific nature of the offense committed by Claimant; (3) whether Claimant's job required any special degree of trust on the part of Employer, considering whether the Claimant worked with items of value and whether he was normally under the direct supervision of Employer; and (4) any other

---

[8] Employer specifically averred that Claimant violated Sections 3304 (criminal mischief), and 3921(a) (theft by unlawful taking of movable property) of the Crimes Code, 18 Pa.C.S. §§ 3304, 3921(a).

[9] Employer alleged that Claimant violated Section 3717 (trespass by motor vehicle) of the Vehicle Code, 75 Pa.C.S. § 3717.

circumstances which might particularly affect Claimant's ability to do his job, including whether the crime/offense occurred on or off Employer's premises and whether or not it involved any of Employer's other workers or clients. In *Sheaffer v. Unemployment Compensation Board of Review,* . . . 499 A.2d 1121 ([Pa. Cmwlth.] 1985), we stated that the factors relevant to this determination included the specific nature of the offense, but no single factor was necessarily dispositive of the issue of whether the claimant's conduct reflected adversely on his fitness to do his job. 'Rather, if an examination of all relevant circumstances, including especially the nature of the conduct in question, leads to the conclusion that a claimant's conduct is incompatible with his job responsibilities, then the second prong of the *Derk* test is satisfied. While a consideration of a claimant's specifically assigned duties may be relevant to this determination, if it is otherwise apparent that the claimant's conduct was inimical to the interests of his employer, it is not necessary for an employer to present into evidence a description of a claimant's specific duties.' [*Sheaffer*]*,* 499 A.2d at 737 [sic].

*Elser v. Unemployment Comp. Bd. of Review,* 967 A.2d 1064, 1070 (Pa. Cmwlth. 2009) (citation omitted).

Here, with respect to "whether Claimant's behavior directly affected his ability to perform his job duties[,]" *Elser,* 967 A.2d at 1070, Employer's Human Resource Manager David G. Hogentogler (Hogentogler) testified:

EL [Employer's attorney Steven Stine] [] Hogentogler, as part of the Claimant's job duties would he have to regularly interact with the general public?

EW1 [Hogentogler] Yes he would.

EL Okay. Did he also regularly interact with other Township employees, departments and so forth?

EW1 Yes. The employees, the public, any contractors that may be working with the Township or doing work.

EL Is [Claimant] directly, or was he directly supervised in his activities or did he work relatively independently without supervision?

6

EW1 [Claimant] in his job as an engineering field technician worked with very little or no supervision. It was his responsibility to go out and handle the storm water issues or anything else that was under his area of responsibility.

EL Okay. With employees who work independently as opposed to being directly supervised by [] Employer, does [] Employer have to have a high degree of trust in that employee?

EW1 Yes they do.

EL Okay. And as part of [Claimant's] job duties does he have to exercise judgment in the performance of the duties?

EW1 Yes he does.

EL Did [Claimant's] conduct with regard to the September 24, 2015 incident have a direct affect on his ability to perform his job duties?

EW1 I feel he [sic] did.

EL Okay and why do you say that?

EW1 Because of the expectation of his job duties to interact with the public, the fact that in this conduct outside of work I think he exercised poor judgment in going onto this property, damaging it and he on a daily basis would be operating a Township vehicle, being out by himself and the trust that we had in him has been affected by his off duty conduct. In addition, the reputation with the Police Department, the Sewer Department and the contractor that was involved is [sic] the fact that we had a Township employee engaged in this kind of conduct outside of duty affected our ability to trust his judgment.

EL And that, employee judgment is an important part of working for a public entity. Is that correct?

EW1 Yes it is.

EL That's all I have.

Reproduced Record at 60a.

7

[W]e disagree with Claimant that his conduct . . . does not preclude the denial of [UC] benefits. While he may be able to perform his particular duties as [an engineering field technician] - it is the nature of the offense and Claimant's position as [a Township employee] that is troubling to this Court. Claimant fails to realize that as [a Township employee], even away from Employer's premises, he has a responsibility to Employer to conduct himself in a manner that is not adverse to Employer's interests. **By Claimant [trespassing on Authority property, damaging Authority property, damaging the Township's hydroseed, accessing Contractor's backhoe, using a universal Caterpillar key to convert Contractor's backhoe, and concealing all of the above]**, such conduct does not depict an individual who has the interests of his Employer at heart and whose conduct does have bearing on his ability to perform his job.

*Elser,* 967 A.2d at 1070 (emphasis added.)

Accordingly, because Claimant is ineligible for UC benefits under Section 3 of the Law, the UCBR's order is reversed and UC benefits are denied.

_____
ANNE E. COVEY, Judge

8

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lower Paxton Township,  :
                Petitioner  :
                                   :
            v.  :
                                   :
Unemployment Compensation  :
Board of Review,  :    No. 857 C.D. 2016
                Respondent  :

## O R D E R

AND NOW, this 3rd day of April, 2017, the Unemployment Compensation Board of Review's April 28, 2016 order is reversed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lower Paxton Township, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 857 C.D. 2016 |
| | : | Submitted: December 16, 2016 |
| Unemployment Compensation Board | : | |
| of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE DAN PELLEGRINI, Senior Judge

<u>OPINION NOT REPORTED</u>

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT                                    FILED: April 3, 2017

The Unemployment Compensation Board of Review (Board) held that Matthew M. Miller's (Claimant) tortious, but off-duty, conduct against a third party did not directly impact his ability to do his job as an "engineering field technician" for the Township. Accordingly, the Board awarded Claimant unemployment compensation. The majority reverses, but I would defer to the Board's judgment in this regard. My principal concern, however, is using Section 3 of the Unemployment Compensation Law (Law)[1] as the basis for deciding any employee's eligibility for unemployment compensation. Accordingly, with respect, I must dissent.

Section 3 of the Law, entitled "Declaration of Public Policy," states as follows:

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §752.

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own. The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. *The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.*

43 P.S. §752 (emphasis added). In brief, Section 3 declares that the "public good" requires the "setting aside of financial reserves" by employers to protect against "the hazards of unemployment and indigency." *Id.*

At the time the Law was enacted in 1937, a claimant could be denied unemployment compensation for two reasons: for refusing to accept "suitable work" or for "voluntarily" leaving a job. Section 402 of the Law.[2] At that time, willful misconduct did not render a claimant ineligible for compensation.[3]

_____

[2] At the time it was enacted, Section 402 provided:

> Ineligibility for Compensation. – An employe shall be ineligible for compensation for any week in which his unemployment is due to –

> (a) Failure, without good cause, either to apply for suitable work when so directed by the employment office, or to accept suitable work when offered to him by the employment office. In determining whether or not any work is suitable for

**(Footnote continued on the next page . . .)**

MHL-2

In 1942, the Pennsylvania Superior Court considered a claim for unemployment compensation filed by an individual who lost his job because of his conviction and imprisonment for larceny. The Superior Court turned to the "Declaration of Public Policy" in Section 3 of the Law to defeat his claim. The court reasoned that Section 3 was not a "mere preamble ... but a constituent part of [the statute] and is to be considered in construing or interpreting it." *Department of Labor and Industry, Bureau of Employment and Unemployment Compensation v. Unemployment Compensation Board of Review*, 24 A.2d 667, 667 (Pa. Super. 1942). It further reasoned that because the reserves "are to be contributed by employers only" and "[n]one are ... contributed by or charged against employees," it was appropriate that those reserves be used only to benefit persons "unemployed through no fault of their own." *Id.* at 668. The Superior Court concluded that a person "who has lost his employment because of his commission of a crime involving moral turpitude" was at fault for being unemployed. *Id.*

---

**(continued . . .)**

> an individual, the department shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training and experience, and the distance of the available work from his residence;
>
> (b) Voluntarily leaving work, except where as a condition of continuing in employment the employe would be required to join or remain a member of a company union or to resign from or refrain from joining any bona fide labor organization, or to accept wages, hours or conditions of employment not desired by a majority of the employes in the establishment or the occupation, or would be denied the right of collective bargaining under generally prevailing conditions.

Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, art. IV, §402.

[3] The Act of May 29, 1945, P.L. 1145 added subsection (e) to Section 402, which makes an employee whose lack of work is caused by willful misconduct ineligible for unemployment benefits.

The holding of the Superior Court became the foundation for Pennsylvania's appellate jurisprudence that, somehow, Section 3 can be violated by a putative claimant. First, the rationale to *Department of Labor and Industry* is no longer availing; today employees do contribute to the "reserves" used to pay unemployment benefits through a payroll tax. *See* Section 301.4 of the Law, added by the Act of July 21, 1983, P.L. 68, *as amended*, 43 P.S. §781.4 (requiring employees to contribute to the Unemployment Compensation Fund). Second, the principle that a criminal cannot collect compensation where his unemployment is caused by his crime and incarceration is addressed elsewhere in the Law. *See* Section 402.6 of the Law, added by the Act of October 30, 1996, P.L. 738, *as amended*, 43 P.S. §802.6 (incarcerated employees not eligible for unemployment benefits). Simply, there is no need to shoehorn a substantive eligibility standard into Section 3, which merely declares legislative policy.

Claimant committed at least two torts. He drove his truck over wet and newly seeded ground that belonged to a third party, the Township Sewer Authority. This was a trespass because he did not have permission to enter the Authority's property to collect firewood. Likewise, he did not have permission to "borrow" still another third party's backhoe to extricate his truck from the newly seeded ground he had reduced to mud. Employer fired Claimant. The question is whether Claimant's torts made him ineligible for unemployment.

In 1945, Section 402(e) was added to the Law, and it states as follows:

An employe shall be ineligible for compensation for any week -

\* \* \*

(e) *In which his unemployment is due to his discharge* or temporary suspension from work for *willful misconduct connected with his work,*

MHL-4

*irrespective of whether or not such work is "employment" as defined in this act*.

Added by the Act of May 29, 1945, P.L. 1145, amended by the Act of August 24, 1953, P.L. 1397, *as amended*, 43 P.S. §802(e) (emphasis added). Section 402(e) incorporates the principles of *Department of Labor and Industry*. This should have ended the fiction that Section 3 states an eligibility standard, as opposed to stating the policy that underlies the above-stated eligibility standard.

Instead, we have developed a body of Section 3 jurisprudence that has been correctly summarized by the majority as follows: where a claimant's conduct is contrary to acceptable standards of behavior and that conduct "directly reflects upon the claimant's ability to perform his or her assigned duties," he is ineligible for compensation. *Hawkins v. Unemployment Compensation Board of Review*, 695 A.2d 963, 965 (Pa. Cmwlth. 1997). The employer bears the burden of proving both parts of this two-prong test. *Navickas v. Unemployment Compensation Review Board*, 787 A.2d 284, 288 (Pa. 2001). This two-prong test has been fashioned out of thin air, not Section 3.

The only provision in the Law that should ever be considered where a claimant's conduct renders him ineligible for compensation is Section 402(e). Indeed, whether off-duty misconduct renders a claimant ineligible for unemployment has also been reviewed under Section 402(e) of the Law.

One such case is *London v. Unemployment Compensation Board of Review*, 533 A.2d 792 (Pa. Cmwlth. 1987). In *London*, the claimant had been employed for seven years in a position where she prepared telephone directories for G.T.E. of Pennsylvania. Her employer, G.T.E., discovered that she had set up numerous phone accounts with G.T.E. under various names, not her own. By the time G.T.E. discovered this fraud, the accounts were in arrears to the tune of

MHL-5

$867.47.  G.T.E. discharged her, and the Board denied her application for unemployment.

This Court reversed.  We held that her off-duty misconduct constituted "proper grounds for terminating [the] [c]laimant or forcing her resignation" but was "not sufficiently connected to her job" to render her ineligible for compensation.  *Id*. at 794.  We reasoned that "in order for concealed or falsified information to be disqualifying for unemployment compensation benefits, such information had to be material to the qualifications of [the] claimant's employment."  *Id.* at 793.  The claimant committed her misconduct as a consumer, which was not sufficiently connected to her job duties involving the preparation of telephone directories.  *Id*. at 793-794.  This analysis mirrors the analysis we employ in the so-called "Section 3" off-duty misconduct cases.

Our Section 3 jurisprudence is a house of cards long overdue for a tear down.  It is redundant of Section 402(e), which expressly addresses eligibility for unemployment benefits where the claimant has committed misconduct "connected with his work."  43 P.S. §802(e).  Section 402(e) does not say the misconduct has to occur at work, *i.e.*, on-duty or off-duty.  An employee who "borrows" his neighbor's barbeque without asking and uses up all of the charcoal briquettes has surely committed a trespass.  However, it is not likely that his employer can show that this tort is "connected with his work."  *Id.*

Further, the Section 3 cases that have denied compensation benefits for off-duty misconduct involve criminal conduct.  *See, e.g., Masom v. Unemployment Compensation Board of Review*, 528 A.2d 1057 (Pa. Cmwlth. 1987) (employment specialist for a county discharged for criminal drug conviction); *Unemployment Compensation Board of Review v. Ostrander*, 347

A.2d 351 (Pa. Cmwlth. 1975) ("serious" criminal conviction for conduct that resulted in death of non-union truck driver). A mere arrest does not suffice. *Unemployment Compensation Board of Review v. Derk*, 353 A.2d 915 (Pa. Cmwlth. 1976) (holding that arrest for morals charge does not reflect on one's ability to do job). Even so, not all off-duty criminal conduct will make an employee ineligible for compensation under our Section 3 jurisprudence. *See Southeastern Pennsylvania Transportation Authority v. Unemployment Compensation Board of Review*, 506 A.2d 974 (Pa. Cmwlth. 1986) (holding that off-duty conduct that included a shooting in a domestic dispute was *not* disqualifying because it did not reflect on the claimant's ability to do his job).

Under Section 402(e) of the Law, an employer can make off-duty misconduct a dischargeable offense, and Employer's Administrative Policy does so. It identifies "conviction of a criminal offense" as a "sufficient cause for disciplinary action." Reproduced Record at 27a-28a (R.R. ___). Claimant's tortious conduct may have also constituted a crime at some level; "criminal mischief" comes to mind. However, Employer's Administrative Policy is limited to a "conviction." It does not sweep tortious, off-duty conduct into a basis for discipline. As in *London*, Employer had grounds to terminate Claimant's employment, but to disqualify him from collecting unemployment benefits it had to demonstrate how Claimant's torts impacted his ability to do the job of an "engineering field technician." David G. Hogentogler, Employer's Human Resource Manager, testified that he "felt" Claimant's conduct and poor judgment affected Employer's trust in him.[4] Notes of Testimony, 3/24/2016, at 17; R.R. 60a.

---

[4] This justification is so general that it would apply to any employee, regardless of his or her job duties. In *Masom,* 528 A.2d at 1060, an employment specialist's drug conviction was found **(Footnote continued on the next page . . .)**

However, Hogentogler's testimony did not identify the duties of a field technician, let alone correlate those job duties to Claimant's lapse in judgment and Employer's loss of trust in him. *See Southeastern Pennsylvania Transportation Authority*, 506 A.2d at 977 (explaining why it is necessary that a claimant's job "requires [a] special degree of trust on the part of the employer" in order to hold the off-duty misconduct disqualifying).

I would affirm the Board's judgment. I would also direct that all eligibility questions should be decided under Section 402 of the Law. In its seminal ruling, the Superior Court observed that Section 3 should be "considered in construing or interpreting [the Law.]" *Department of Labor and Industry*, 24 A.2d at 668. This wise observation was then followed by its results-oriented conclusion that Section 3 states a standard. A "declaration" is not a standard. There was a gap in the Law when *Department of Labor and Industry* was decided in 1942, but that gap has been filled. This lingering Section 3 jurisprudence adds nothing but confusion to what is directly and fully addressed in Section 402(e) of the Law.

_____

MARY HANNAH LEAVITT, President Judge

_____

**(continued . . .)**
inimical to the interest of her employer, a county, which was involved in fighting drug use and distribution in the county. Accordingly, her criminal misconduct was held to be related to her work.

MHL-8