96 Pa. Commonwealth Ct. 38 (1986)
506 A.2d 974
Southeastern Pennsylvania Transportation Authority, Petitioner
v.
Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.
No. 567 C.D. 1984.
Commonwealth Court of Pennsylvania.
Submitted on briefs July 8, 1985.
March 19, 1986.
*39 Submitted on briefs July 8, 1985, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.
G. Roger Bowers, with him, Vincent J. Walsh, Jr., for petitioner.
James K. Bradley, Associate Counsel, with him, Charles G. Hasson, Acting Deputy Chief Counsel, for respondent.
OPINION BY SENIOR JUDGE BARBIERI, March 19, 1986:
Southeastern Pennsylvania Transportation Authority (SEPTA) appeals from a decision and order of the Unemployment Compensation Board of Review (Board) reversing the referee and granting unemployment compensation to Claimant Bobbie Lee McMiller under Section 3 of the Unemployment Compensation Law (Law)[1] *40 (declaration of public policy that benefits will be granted only to persons unemployed through no fault of their own). We affirm.
Claimant was employed by SEPTA as a bus operator until March 8, 1983. On March 9, Claimant was involved in a domestic altercation during which he allegedly shot two other people and then himself. The referee and the Board so found. From March 9 onward, Claimant was in the hospital recuperating from a bullet wound to his chest. He was eventually given permission by his physician to return to work on June 17, 1983. SEPTA would not permit Claimant to return to work, however, until Claimant obtained a work-release from SEPTA's physician. Because SEPTA had given Claimant a deadline for returning to work and because his appointment had been postponed several times, Claimant went to the workplace to try and pinpoint the exact date of his appointment with the SEPTA physician. Upon leaving the employer's premises, Claimant was hit by a bus and, as a result, hospitalized. Claimant was, therefore, unable to return to work by July 4, 1983, the deadline set by SEPTA. By letter dated July 6, 1983, Claimant was advised that SEPTA considered Claimant to have voluntarily terminated his employment effective that date.
When Claimant applied for unemployment compensation the employer advised the Office of Employment Security (OES) that Claimant was separated from his employment when he failed to return to work upon the expiration of his accrued sick leave. The OES found that Claimant did not return to work as scheduled, that Claimant requested a leave of absence which the employer denied, and that Claimant failed to submit any medical certification to his employer stating that he was unable to work. The Notice of Determination issued by the OES advised Claimant that his application for *41 benefits was disapproved pursuant to Section 402(b) of the Law[2] (voluntary quit).
Nevertheless, at the hearing scheduled before the unemployment compensation referee upon Claimant's appeal from the OES' determination, the employer's representative advised the referee that it wished to proceed under Section 3 of the Law as Claimant had been separated from his employment, not for failure to return to work upon the expiration of his accrued sick leave as the employer had previously asserted, but because of the non-work-related domestic altercation.[3] The Claimant agreed, and the referee issued his decision concluding that the facts presented regarding the domestic altercation warranted a denial of benefits under Section 3. The Board on appeal stated that the employer had not produced evidence to show that Claimant's conduct, which led to his arrest, directly affected his ability to perform his assigned duties. Because the employer failed to produce such evidence, the Board concluded that the Claimant could not be disqualified *42 from receiving benefits under Section 3 of the Law. The Board reversed the referee and granted benefits.
SEPTA argues before this Court that Claimant was not discharged merely because of the shooting incident, as SEPTA's representative at the hearing asserted, but because, as a result of the shooting, Claimant overextended his accrued sick leave. Therein lies the fault, argues SEPTA, which disqualifies Claimant for benefits under Section 3.
SEPTA's argument illustrates a common misperception regarding Sections 3 and 402(e)[4] of the Law. Section 3 provides a basis for disqualification that is independent of those enumerated in Section 402 of the Law. Corbacio v. Unemployment Compensation Board of Review, 78 Pa. Commonwealth Ct. 70, 466 A.2d 1117 (1983). Section 402(e) is used to disqualify claimant for work-related misconduct. Section 3 is used to disqualify claimants for non-work-related misconduct which is inconsistent with acceptable standards of behavior and which directly affects the claimant's ability to perform his assigned duties. Unemployment Compensation Board of Review v. Derk, 24 Pa. Commonwealth Ct. 54, 57, 353 A.2d 915, 917 (1976). SEPTA may not, as it attempts to do, link Claimant's failure to return to work upon the expiration of his sick leave, work-related misconduct, with the domestic altercation to establish the fault, or non-work-related misconduct, necessary to disqualify Claimant under Section 3.
The task before this Court is to review the Board's determination that SEPTA failed to produce evidence of *43 conduct on the part of Claimant which directly reflected upon Claimant's ability to perform his assigned duties, a burden imposed by Derk.
Since Derk, however, this Court has decided two cases refining the two-prong burden of proof set forth in Derk requiring the employer to show that (1) Claimant's conduct was contrary to acceptable standards of behavior, and (2) the conduct in question directly reflects upon Claimant's ability to perform his assigned duties. In Sheaffer v. Unemployment Compensation Board of Review, 92 Pa. Commonwealth Ct. 431, 499 A.2d 1121 (1985), after noting that evidence of the conduct leading to the arrest will satisfy the first part of the Derk test, we analyzed the second half of the Derk test and stated that a number of factors should be considered in determining whether a claimant's conduct directly reflects upon his ability to do his job: (a) the specific nature of the offense committed by Claimant; (b) the nature of Claimant's assigned duties; (c) whether Claimant's job requires any special degree of trust on the part of the employer; and (d) any other circumstances which may particularly affect Claimant's ability to do his job, including whether the crime occurred on or off Employer's premises, and whether or not it involved any of Employer's other workers or clients.
In Snelson v. Unemployment Compensation Board of Review, 93 Pa. Commonwealth Ct. 539, 502 A.2d 734 (1985), we noted the Sheaffer decision and then stated:
. . . [N]o single factor is necessarily dispositive of the issue of whether a claimant's conduct reflects adversely on his fitness to do his job. Rather, if an examination of all relevant circumstances, including especially the nature of the conduct in question, leads to the conclusion that a claimant's conduct is incompatible with his job *44 responsibilities, then the second prong of the Derk test is satisfied. While a consideration of a claimant's specifically assigned duties may be relevant to this determination, if it is otherwise apparent that the claimant's conduct was inimical to the interests of his employer, it is not necessary for an employer to present into evidence a description of a claimant's specific duties.
The claimant in Snelson had become extremely inebriated during off-duty hours, had become engaged in a fight with a co-worker and then stabbed the co-worker to death. Although the employer had made no showing as to the specific assigned duties of the claimant in his capacity as a housekeeper, we held that the very serious nature of the claimant's conduct, the fact that the victim was the claimant's co-worker, and the particular circumstances that the claimant was intoxicated when he committed the offense and that he worked for a drug and alcohol rehabilitation center provided sufficient evidence to establish that the claimant's conduct was incompatible with his work responsibilities.
Thus the question before us in the case at hand becomes whether SEPTA satisfied its burden of proving conduct contrary to acceptable standards which, in consideration of all the relevant circumstances, is incompatible with his work responsibilities. In support of its burden of proof, SEPTA's representative offered a newspaper clipping reporting the events of the domestic altercation in which Claimant was involved and a copy of the results of the internal investigation made by SEPTA. Neither were objected to as hearsay and, therefore, may be considered provided there is corroborating testimony. Walker v. Unemployment Compensation Board of Review, 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976). The Claimant testified that the reason he did not return to work after March 8, 1983 was because *45 he was shot during a domestic dispute involving his son. No greater detail was provided by Claimant except that charges were filed against Claimant for having possession of a weapon and that the charges were still pending. Claimant never admitted to shooting either himself or anyone else. The Board's finding that Claimant shot himself and two other people is, therefore, not supported by the evidence.
Our task of determining the sufficiency of the evidence regarding whether Claimant's conduct is incompatible with his position as a bus driver has thus been rendered impossible by the employer's failure to establish such conduct on the part of Claimant contrary to acceptable standards of behavior. The employer, thus, did not meet its burden of proof; it failed to establish that Claimant's separation from employment was due to Claimant's fault. Accordingly, we must affirm the Board's award of benefits.

ORDER
AND Now, this 19th day of March, 1986, the order of the Unemployment Compensation Board of Review, No. B-226458, dated January 26, 1984, is hereby affirmed.
NOTES
[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §752.
[2] 43 P.S. §802(b).
[3] The following is taken from the notes of testimony at the hearing before the referee:

QR: We'll go off the record. We're back on record, employer representative has a statement to make on the record.
AEW: When Septa filled out the UC-45 form, they said the expiration of sick leave. Septa is requesting that this unemployment be viewed under Section 3 rather than Section 402B, voluntarily quitting because the reason is that the claimant was in an outside accident and as a result of that he was discharged. It was not that he resigned from Septa.
QR: He was discharged because of an incident that took place.
AEW: A non-work related incident.
QR: Any objections?
AC: No.
[4] 43 P.S. §802(e) which provides:

An employe shall be ineligible for compensation for any week (e) in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. . . .