**Henry L. TURNER, Petitioner**

v.

### UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 1, 2006.

Decided May 16, 2006.

As Amended May 17, 2006.

Michael A. Frisk, Jr., Ellwood City, for petitioner.

Edward Leymarie, Jr., Ellwood City, for intervenor, Borough of Ellwood City.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge LEADBETTER.

Henry L. Turner (claimant) appeals from a determination of the Unemployment Compensation Board of Review (Board), which denied him benefits because Turner tested positive for marijuana use, in a test pursuant to the Borough of Ellwood City's (employer) substance abuse policy. We affirm.

Claimant, who has a commercial driver's license (CDL), began working in the employer's public works department in 1974.

In 1994, claimant was promoted to be the director of the public works department, a position he held until his termination. In 1995, pursuant to federal regulations, employer adopted a substance abuse policy, which provided, in part, for random drug and alcohol testing of all employees with a CDL.[1] On August 10, 2004, the claimant's last day of work, the claimant was selected for random drug testing. On August 18, 2004, the employer was notified that the claimant had tested positive for marijuana, and soon thereafter, the employer terminated the claimant.

The claimant applied for unemployment compensation benefits. The local job center found that claimant was ineligible for benefits under Section 402(e.1) of the Unemployment Compensation Law[2] (Law) because claimant had failed the employer's random drug test. Claimant appealed. On February 8, 2005, the referee held a hearing, during which the employer presented the testimony of Joseph Cioffi, the borough manager, Linda Pawlowski, the borough secretary, Thomas Campbell, the lab technician for Apple Occupational Health Services (Apple) who took claimant's urine specimen,[3] and Stanley Kammerer, vice president and director of toxicology at Clinical Reference Laboratory (CRL).[4] The employer also entered into evidence: 1) a "litigation packet," which contained information from CRL, including the results of claimant's drug test and a truncated resume detailing Kammerer's work history at CRL; 2) the minutes of a meeting in which the employer adopted its substance abuse policy; 3) the employer's substance abuse policy; and 4) an attendance sheet of an employee meeting, listing claimant in attendance, regarding employer's newly adopted substance abuse policy. At the hearing, claimant did not present any witnesses and only responded to some background questions asked by the referee regarding his work history.

On February 11, 2005, the referee issued a decision, specifically finding:

2. In relevant part, the employer's rule prohibits the use, sale, and possession of illegal drugs. Violation of said rule calls for disciplinary action up to and including termination of employment.

3. To enforce its rule, the employer uses a random process to select individuals who will be tested for use of controlled substances.

4. The claimant was aware or should've been aware of the employer's rules.

5. On August 10, 2004, the claimant was selected for random-drug testing.

6. The claimant consented and provided a urine sample at the local-testing center.

---

1. Claimant received training on the employer's substance abuse policy shortly after its enactment.

2. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e.1). Section 402(e.1) was added by Section 3 of the Act of December 9, 2002, P.L. 1330, and became effective immediately. Under Section 402(e.1), an employee is ineligible for unemployment compensation in any week "[i]n which his unemployment is due to discharge or temporary suspension from work due to failure to submit and/or pass a drug test conducted pursuant to an employer's established substance abuse policy, provided that the drug test is not requested or implemented in violation of the law or of a collective bargaining agreement." 43 P.S. § 802(e.1).

3. Representatives from Apple, like Campbell, collect the urine specimens from the employees who have been selected for random drug testing.

4. CRL is one of only forty-eight laboratories in the United States that the federal government has certified to complete workplace drug testing. Apple mailed claimant's urine specimen to CRL, which completed the drug testing on claimant's specimen.

7. The sample followed a secure, chain-of-custody from the time it was provided at the local center until the testing was concluded.

8. On August 18, 2004, the employer was notified by the testing facility that the claimant had tested positive for the use of marijuana.

9. After an investigation, the employer terminated the claimant's employment for failing a drug-screening test, which was a violation of the employer's rules.

Referee's op. at 1 (Appeal No. 04–09–H–C235, mailed February 11, 2005). Based upon these findings, the referee concluded that the claimant was ineligible for benefits under Section 402(e) of the Law, 43 P.S. § 802(e), because the claimant had violated the employer's rule prohibiting drug use.[5] Claimant appealed to the Board. The Board reviewed the evidence before the referee, adopted and incorporated the referee's findings and conclusions, and affirmed.[6]

Claimant appealed to our court contending that employer failed to prove willful misconduct under Section 402(e) of the Law. Claimant argues that absent evidence that the positive drug test resulted from on-duty conduct, there occurred no violation of employer's substance abuse policy, which, claimant asserts, prohibits only on-duty use. Claimant further contends that the referee failed to adhere to the requirements of Section 6108(b) of the Business Records as Evidence Act (Act), 42 Pa.C.S. § 6108(b), when he admitted the drug test results into evidence without authenticating testimony by the Medical Review Officer (MRO), who acts as records custodian. Claimant further argues that the drug test results cannot be used against him because the employer never obtained his consent before accessing the results.[7]

 Although claimant bases his first argument on Section 402(e) of the Law, termination for drug use should be analyzed under Section 402(e.1) of the Law. *See UGI Utilities, Inc. v. Unemployment Comp. Bd. of Review*, 851 A.2d 240 (Pa. Cmwlth.2004). Pursuant to Section 402(e.1) of the Law, an employee is ineligible for unemployment compensation in any week "[i]n which his unemployment is due to discharge or temporary suspension from work due to failure to submit and/or pass a drug test conducted pursuant to an employer's established substance abuse policy...." 43 P.S. § 802(e.1). Thus, to render an employee ineligible for unemployment compensation benefits under Section 402(e.1), the employer must establish it adopted a substance abuse policy and that the employee failed a test pursuant to that policy. *UGI Utilities, Inc.*, 851 A.2d 240. Here, neither party disputes that employer had a substance abuse policy or that claimant tested positive for marijuana. Rather, the dispute centers on whether claimant's positive test for marijuana use, without proof that he used marijuana while on duty, actually violated the employer's policy. However, even if we

---

5. Despite analyzing this case under Section of 402(e) of the Law, 43 P.S. § 802(e), the referee did summarize Section 402(e.1) of the Law, 43 P.S. § 802(e.1), in his analysis. Pursuant to Section 402(e), a claimant is ineligible for benefits if s/he is terminated for willful misconduct connected with claimant's work.

6. In his appeal to the Board, claimant raised issues that he is not raising before this court.

Specifically, claimant contended that Kammerer was not in-state so the referee did not have the power to swear Kammerer in and that claimant was improperly terminated because the employer did not hold a public meeting to vote on claimant's dismissal.

7. The Board has not filed a brief in this matter.

were persuaded that claimant did not violate the literal language of employer's policy, this would be of no avail to claimant. By its very terms, Section 402(e.1) renders claimant ineligible for benefits. Although the Board and Referee focused upon Section 402(e), we may affirm an agency's decision "on other grounds where grounds for affirmance exist." *Kutnyak v. Dep't of Corrections*, 748 A.2d 1275, 1279 n. 9 (Pa. Cmwlth.2000).

Moreover, while a literal reading of one portion of employer's policy supports claimant's argument that drug use outside of work hours was not prohibited, viewing the entire policy in context belies this claim. In establishing its substance abuse policy, employer sought to "[e]stablish effective means to detect and deal with drug and alcohol abuse." R.R. at 81a. In furtherance of this goal, employer established random drug testing for its employees as follows:

B. Random Testing

Each year, the Borough of Ellwood City will use a random process to select at least 50% of its CDL drivers, *who will be tested for the use of controlled substances.* Additionally, at least 25% of its CDL drivers will be randomly tested for alcohol use in the first year of this policy. Drivers selected on a random basis for testing will be required to supply a urine sample for the drug test. The alcohol test will be done by a breathalyzer machine.

R.R. at 81a–82a (emphasis added) (random testing provision). The policy further specifies that employees will be tested for "the following substances present in the body: alcohol, cocaine, phencyclidine (PCP), marijuana, opiates (including heroin) and amphetamines." R.R. at 81a.

Under the policy, in addition to random drug testing, employees are prohibited from using, possessing, or selling certain substances while on duty. That provision states, in pertinent part:

Employees shall not use, sell, possess or [sic] receive alcohol and illegal drugs, or distribute or sell prescription drugs while on duty. Violation of these rules will subject the employee to discipline up to and including termination, subject to any applicable provisions and procedures of a collective bargaining agreement. Illicit drugs include prescription drugs for which the employee does not have a valid prescription.

R.R. at 84(a) (on-duty use provision). Claimant contends that under employer's substance abuse policy, proof of a failed drug test alone is insufficient to establish he violated that policy. Rather, claimant argues, to establish a violation of the substance abuse policy, the employer had to prove claimant used drugs while on-duty.

We cannot agree. As this court previously has held, "[c]laimant's submission to the condition of random drug testing is sufficient to infer [c]laimant's understanding that he had to abstain from any drug use . . . ." *Szostek v. Unemployment Comp. Bd. of Review*, 116 Pa.Cmwlth. 7, 541 A.2d 48, 50 (Pa.Cmwlth.1988).[8] The random testing provision in employer's substance abuse policy enforces the requirement that employees not only refrain from on-duty drug use but also be free from drugs remaining in employees' systems while on-duty. Otherwise the test would serve no purpose, because a positive test would be meaningless, or at least could result in no consequences absent independent direct proof of on-duty use. Thus, we conclude that claimant's positive test for marijuana constituted a violation of employer's substance abuse policy.

8. *Szostek* was decided prior to the enactment of Section 402(e.1) of the Law.

■ Next, claimant contends that the referee erred in admitting the drug test results without the authenticating testimony by the record custodian, *i.e.* the MRO. Section 6108(b) of the Act states:

> A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian *or other qualified witness* testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S. § 6108(b) (emphasis added). In discussing this exception to the hearsay rule, this court has held:

> Under this exception, it is not essential to produce either the person who made the entries or the custodian of the record at the time the entries were made or that the witness qualifying the business records even has personal knowledge of the facts reported in the business record. As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness of the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence.

*Virgo v. Workers' Comp. Appeal Bd.,* 890 A.2d 13, 20 (Pa.Cmwlth.2005) (citations omitted). Furthermore, in a decision discussing the admissibility of drug test results under Section 6108(b) of the Act, this court held that the testimony of the supervisor of those persons who are actually performing the drug testing of a urine specimen, is sufficient to establish the reliability and trustworthiness of the evidence under the Act. *Artis v. Unemployment Comp. Bd. of Review,* 699 A.2d 849, 852 (Pa.Cmwlth.1997).

Here, Kammerer testified he was the vice-president, director of toxicology and "custodian of records for the toxicology department of [CRL]." R.R. at 8a. He further testified that he "administer[s] the day-to-day operation[s] of the laboratory and review[s] and certif[ies] all cases that go through legal matters." R.R. at 9a. He went on to testify that CRL received claimant's urine specimen from Apple, identified the specimen through the use of an identifying barcode and identification number matched to claimant's social security number, and ensured that the specimen was received intact and untainted.[9] Kammerer further testified about the methods CRL uses to test and re-test (when the initial test indicates a positive result) urine specimens, how he screens and confirms the instrument data, ensures that the chain of custody was properly documented, reviews the documents particular to each specimen, and regularly prepares a "litigation packet," like the one entered into evidence by the employer, when the urine specimen tests positive for a controlled substance. Finally, during his testimony, Kammerer identified the litigation packet containing claimant's drug test results and stated that these records were kept in the ordinary course of business. Thus, Kammerer's testimony regarding claimant's drug test results provided very detailed and sufficient information relating

9. Campbell testified that he placed this identifying barcode and number on claimant's urine specimen to seal and identify the specimen. Campbell further testified that he placed claimant's marked and identified urine specimen into a courier envelope, sealed the envelope, and placed the envelope in a courier's locked mailbox. Campell also testified that not only is this the regular mode of identifying and taking urine specimens but that this all took place in claimant's presence.

to the preparation of claimant's drug test results and justified, not only a presumption about the trustworthiness of this record but, its admission.

■ Claimant next alleges the Board erred in admitting the drug test results because the employer never received the claimant's permission to access the results. In support of this argument, claimant points to a portion of the employer's policy which states that:

No person may obtain the individual test results retained by the Medical Review Officer, and no Medical Review Officer shall release the individual test results of any employee to any person, without first obtaining written authorization from the tested individual, unless otherwise required by law.

R.R. at 84a. Claimant misconstrues the employer's substance abuse policy regarding access to the test results. Employer's substance abuse policy, considered in its totality, establishes that the employer, the tested employee, and the employer's MRO will have access to the tested employee's drug test results when an employee tests positive for a prohibited substance. There would be little point in establishing a mandatory drug testing policy if the employer could not obtain the results without the consent of the employee tested. Moreover, in the section labeled "Notification of Test Results," the employer's substance abuse policy states:

The [employer] will notify its drivers and driver-applicants of the result of tests conducted pursuant to the DOT regulations. Drivers who test positive will also be advised specifically what drug or the amount of alcohol that was discovered.

R.R. at 83a. Obviously, to be able to notify its employees of the test results, the employer would need access to those results prior to an employee's consent. Ad-ditionally, in a section entitled "Record-keeping," the substance abuse policy states that the employer shall retain the employee's drug test results in the employee's personnel file. The provision that the claimant points to prevents the record of test results from being released to third parties without the employee's consent. R.R. at 84a. *See, e.g.,* 49 C.F.R. § 40.321 (requiring that the results of an employee's drug test, conducted pursuant to a substance abuse plan established under federal regulations, must be kept confidential from third parties absent the employee's consent). Thus, this argument is without merit.

Accordingly, we affirm the Board's holding that claimant is ineligible for benefits.

### ORDER

AND NOW, this 16th day of May, 2006, the order of the Unemployment Compensation Board of Review in the above captioned matter is hereby AFFIRMED.

COLINS, President Judge, files dissenting opinion in which PELLEGRINI, J., joins.

FRIEDMAN, J., files opinion concurring in part and dissenting in part in which PELLEGRINI, J., joins.

DISSENTING OPINION BY President Judge COLINS.

I dissent. Because on cross-examination, the toxicologist admitted that he could not tell from the test results whether the claimant used marijuana or was under the influence of marijuana while on duty, there is not substantial evidence to support the conclusion that claimant violated the employer's drug policy.

Judge PELLEGRINI joins in this dissenting opinion.

CONCURRING AND DISSENTING OPINION BY Judge FRIEDMAN.

Respectfully, I concur in part and dissent in part.

Ellwood City Borough (Employer) has a drug and alcohol policy that specifically applies to Henry L. Turner (Claimant) and other employees who hold a commercial drivers license (CDL). (R.R. at 81a–85a.) Section IV of Employer's CDL policy was adopted pursuant to federal regulations and provides for random drug and alcohol testing of employees holding a CDL. (R.R. at 81a–84a.) Claimant received training in Employer's CDL drug and alcohol testing program in March of 1996. In addition to the provisions governing drug and alcohol testing, section V of Employer's CDL policy provides that employees shall not use, sell, possess or receive alcohol and illegal drugs, or distribute or sell prescription drugs, while on duty. (R.R. at 84a–85a.)

In August of 2004, Claimant was selected for random drug testing as provided by section IV of the CDL policy. Employer was notified that Claimant tested positive for marijuana, and Employer terminated Claimant's employment for failing the drug-screening test. The local job center determined that Claimant was ineligible for benefits under section 402(e.1) of the Unemployment Compensation Law (Law),[1] which states that an employee is ineligible for benefits for any week in which his unemployment "is due to discharge or temporary suspension from work due to failure to submit and/or pass a drug test conducted pursuant to an employer's established substance abuse policy...." 43 P.S. § 802(e.1).

Claimant appealed, and the referee held a hearing on February 8, 2005. Employer presented the testimony of Stanley C. Kammerer, the vice president, director of toxicology and custodian of records for the toxicology department at Clinical Reference Laboratory. Kammerer stated that the laboratory results reflected positive for marijuana in Claimant's specimen at a level of 96 nanograms per milliliter. On cross-examination, Kammerer acknowledged that he could not tell from the test results whether Claimant used marijuana or was under the influence of marijuana while on duty. (R.R. at 16a.)

Employer also presented the testimony of: Thomas Campbell, an employee of Apple Mobile Medical, who described the company's acquisition process and documentation procedures; borough secretary Linda Pawlowski, who identified a copy of Employer's CDL policy and Claimant's acknowledgment that he received training with respect to Employer's policy and procedures; and borough manager Joseph Cioffi. On cross-examination, Cioffi also acknowledged that there was no evidence that Claimant used or was under the influence of drugs while on duty. (R.R. at 39a.)

After identifying the issue before him as whether Claimant was ineligible for benefits under section 402(e.1) of the Law, the referee nevertheless concluded that Claimant was ineligible for benefits pursuant to section 402(e) of the Law,[2] based on his findings that Claimant's failure of the drug test constituted a violation of Employer's rules. The UCBR affirmed and adopted the referee's decision.

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *added by* section 3 of the Act of December 9, 2002, P.L. 1330, *as amended*, 43 P.S. § 802(e.1). Section 402(e.1) became effective immediately.

2. 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee is ineligible for compensation if he is unemployed due to willful misconduct connected with his work.

Because the record is devoid of evidence establishing that Claimant used drugs while on duty, as prohibited by section V of Employer's policy, I believe that the UCBR erred in affirming the referee's decision. I recognize that this court may affirm the UCBR on other grounds, and, therefore, I reluctantly concur in this portion of the majority's decision.[3]

However, I strongly object to the majority's analysis insofar as it eschews a literal reading of Employer's rules in favor of a broad interpretation of Employer's policy as a whole.[4] It is well-settled that the deliberate violation of a work rule or policy is generally considered to be willful misconduct, rendering a claimant ineligible for benefits under section 402(e). It is also well-settled that, in order to be disqualifying, an employee's violation of a work rule must be knowing and deliberate. *BK Foods, Inc. v. Unemployment Compensation Board of Review*, 119 Pa.Cmwlth. 632, 547 A.2d 873 (1988). An employee who had no notice of a work rule will not be denied benefits based on willful misconduct. *Tongel v. Unemployment Compensation Board of Review*, 93 Pa.Cmwlth. 524, 501 A.2d 716 (1985). By interpreting an employer's rule or policy as including a requirement that is not explicitly stated in the rule or policy, the court imputes knowledge to a claimant that he or she may not have had. Because knowledge of the work rule or policy is a prerequisite to a knowing and deliberation violation of the same, I believe that this court violates long-standing principles of law when it engages in any "interpretation" of an employer's rule or policy.[5]

Judge PELLEGRINI joins in this concurring and dissenting opinion.

---

**3.** Employer did not seek clarification or correction of the decisions below, and I believe that we should limit our review to the determination that has been challenged on appeal.

**4.** The majority contends that its expansive reading of Employer's policy is necessary to effectuate the purpose of the drug test. Contrary to the majority's reasoning, however, there is no need to make any inferences from the plain language of Employer's policy because benefits can be denied under section 402(e.1) on the basis of positive test results.

**5.** Of course, I do believe that an employer has the right to expect that its employees will not be working under the influence of drugs and/or alcohol. Here, however, Employer's witnesses acknowledged that *there was no evidence that Claimant was under the influence of*

*drugs while on duty*. Thus, at best, the results of the drug test reflect that Claimant ingested or was exposed to drugs while off duty. A claimant may be denied benefits based on off-duty conduct pursuant to section 3 of the Law, 43 P.S. § 752, but only if the employer proves that: (1) the claimant has engaged in unacceptable conduct; and (2) the conduct in question negatively affects the claimant's ability to properly perform his job. *Southeastern Pennsylvania Transportation Authority v. Unemployment Compensation Board of Review*, 96 Pa.Cmwlth. 38, 506 A.2d 974 (1986). In this case there was no evidence that any conduct that could be inferred from the results of the drug-screening test affected Claimant's ability to perform his job.