# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Kohler,                              :
                        Petitioner           :
                                             :
        v.                                   :
                                             :
Unemployment Compensation Board of           :
Review,                                      :
                        Respondent           :        No. 962 C.D. 2015

## **O R D E R**

NOW, April 21, 2016, upon consideration of petitioner's application for reconsideration/reargument, the application is granted to the extent it seeks reconsideration, but reargument is denied.

The opinion and order filed March 9, 2016 are withdrawn.

The attached opinion and order are entered.

_____
MARY HANNAH LEAVITT,
President Judge

Richard Kohler,                  :
               Petitioner     :
                                :
           v.                 :
                                :
Unemployment Compensation    :
Board of Review,               :    No. 962 C.D. 2015
            Respondent   :    Submitted: November 6, 2015


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE MARY HANNAH LEAVITT, Judge[1]
                HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                     FILED: April 21, 2016


        Richard Kohler (Claimant) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) May 27, 2015 order affirming the Referee's decision denying him UC benefits under Section 402(e) of the UC Law (Law).[2] Claimant presents three issues for this Court's review: (1) whether an alcohol test can support a finding of ineligibility for UC benefits based on willful misconduct; (2) whether the City of Allentown's (Employer) Street Department's Superintendent Mark Shahda's (Shahda) admission that Claimant was tested because of his past history precludes a finding of ineligibility for UC benefits under Section

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[2] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (referring to willful misconduct).

402(e.1) of the Law;[3] and (3) whether the evidence supports an inference that Claimant was intoxicated at work. After review, we affirm.

Claimant was hired by Employer as a full-time Equipment Operator II in 1989, and was discharged on March 7, 2014. Within the week of the incident that led to Claimant's discharge, Claimant had returned to his regular job as a heavy equipment operator after having served a 12-month suspension of his operator's license for a nonwork-related driving under the influence (DUI) conviction. Employer has a work rule that prohibits reporting to work under the influence of alcohol or illegal drugs. Employer also has a work rule prohibiting failure to report an accident that results in property damage. Violation of either rule is grounds for disciplinary action up to and including discharge. Claimant was aware of these work rules.

On February 27, 2014, Employer assigned Claimant to clear snow with a dump truck. While dumping snow into a swimming pool at about 10:00 a.m., Claimant's dump truck snagged a live electrical wire, ripping it from the building where it was attached and causing an explosion. Some of Claimant's co-workers witnessed the accident and reported it by radio. Employer has a policy that allows it to subject an employee to a breath or blood alcohol test where there is a reasonable suspicion that there has been alcohol usage. One of the bases for reasonable suspicion is unusual behavior. Shahda required Claimant be tested because he believed that the circumstances of the accident as well as the allegation that Claimant had left the scene without reporting it constituted unusual behavior and, thus, reasonable suspicion.

Claimant was taken to a rehabilitation facility where, at about 12:40 p.m., he took a breathalyzer test that resulted in an alcohol reading of .067.

___

[3] 43 P.S. § 802(e.1) (relating to failure to submit and/or pass a drug test).

2

Employer's risk manager Leonard Lightner, who is familiar with Employer's testing procedure, testified that Claimant's reading was above Employer's threshold for intoxication.

On the day of the accident, Shahda met with Claimant and informed him of the positive alcohol test and that Claimant was being placed on paid leave pending an investigation. Claimant stated that he was not aware he had taken down a wire, and did not respond to the allegation about the positive alcohol test. Despite Employer's attempts to have Claimant meet and further discuss the allegations, Claimant did not do so. By March 7, 2014 letter, Shahda terminated Claimant's employment for reporting to work under the influence of alcohol, for conduct in violation of accepted standards of decency or morality, and for failure to report an accident resulting in property damage.

Claimant applied for UC benefits. On March 24, 2014, the Allentown UC Service Center found Claimant ineligible for UC benefits under Section 402(e) of the Law. Claimant appealed and a Referee hearing was held. On May 19, 2014, the Referee affirmed the UC Service Center's determination. Claimant appealed to the UCBR. On September 11, 2014, the UCBR remanded the matter to the Referee to "put at issue Section 402(e.1) of the [Law], in addition to Section 402(e) of the Law." Certified Record (C.R.) Item No. 16, UCBR Remand Memo. A remand hearing was held on October 14, 2014. On May 27, 2015, the UCBR affirmed the Referee's decision that Claimant was ineligible for UC benefits under Section 402(e) of the Law. Claimant appealed to this Court.[4]

---

[4] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

Claimant first argues that the UCBR erred by finding Claimant ineligible for UC benefits under Section 402(e) of the Law, instead of deciding the case under Section 402(e.1) of the Law. Specifically, Claimant contends that because the UCBR determined that Claimant's employment was terminated for violating Employer's work rule prohibiting being under the influence of alcohol at work, Section 402(e.1) of the Law is the exclusive applicable section of the Law.

Initially, Section 402(e.1) of the Law provides that an employee is ineligible for UC benefits for any week

> [i]n which his unemployment is due to discharge or temporary suspension from work due to failure to submit and/or pass a drug test conducted pursuant to an employer's established substance abuse policy, provided that the drug test is not requested or implemented in violation of the law or of a collective bargaining agreement.

43 P.S. § 802(e.1).

> We agree with [Claimant] that it was error for the [UCBR] to conclude, in effect, that there is no difference between Section 402(e) [of the Law] and Section 402(e.1) [of the Law]. Willful misconduct has long been construed to include the violation of a work rule, including a work rule prohibiting the use of [alcohol[5]] at the workplace. It must be that the Legislature meant to effect some change in the Law when it enacted Section 402(e.1) [of the Law]. The [UCBR's] argument would render Section 402(e.1) [of the Law] mere surplusage; we are charged, however, to give effect to all the language in a statute.

*UGI Utils., Inc. v. Unemployment Comp. Bd. of Review,* 851 A.2d 240, 245 (Pa. Cmwlth. 2004) (citation omitted). However, "[a]lthough the [UCBR] and Referee focused upon Section 402(e) [of the Law], we may affirm an agency's decision 'on

---

[5] This Court has held that "the legislature intended to include alcohol in Section 402(e.1) [of the Law] as one of the common subjects of a substance abuse policy." *Dillon v. Unemployment Comp. Bd. of Review,* 68 A.3d 1054, 1059 (Pa. Cmwlth. 2013).

4

other grounds where grounds for affirmance exist.'" *Turner v. Unemployment Comp. Bd. of Review,* 899 A.2d 381, 385 (Pa. Cmwlth. 2006) (quoting *Kutnyak v. Dep't of Corr.,* 748 A.2d 1275, 1279 n.9 (Pa. Cmwlth. 2000)). "[T]o render an employee ineligible for unemployment compensation benefits under Section 402(e.1) [of the Law], the employer must establish it adopted a substance abuse policy and that the employee failed a test pursuant to that policy." *Turner*, 899 A.2d at 384.

Here, Employer's drug and alcohol policy (Employer's Policy) was admitted into evidence at the Referee hearing. Employer's Policy provides in relevant part:

> B. <u>REASONABLE SUSPICION TESTING</u>
>
> **All . . . employees shall be subject to . . . breath or blood alcohol testing for the presence of alcohol where there is reasonable suspicion to believe based on specific and immediate physical, behavioral or performance indicate[d] probable . . . alcohol use**. Employees shall not consume or use alcohol . . . while off duty to the extent that evidence of such use is apparent when reporting for duty, or to the extent that the employee's ability to perform his/her duty is impaired. . . . **Symptoms which indicate reasonable suspicion include but are not limited to** the following:
>
> . . . .
>
> - Unusual behavior, mood variations or deteriorating performance
>
> . . . .
>
> - Insubordination

Reproduced Record (R.R.) at 62a (emphasis added); Ex. E-1. At the October 14, 2014 Referee hearing, Shahda testified:

> R[eferee]    So did you personally observe any behavior that indicated [Claimant] was under the influence of alcohol?

5

EW1 [Shahda] . . . [T]he incidents that took place there led me to believe that there was reasonable suspicion involved with me sending him for a test.

R      Okay. What led you to believe there was reasonable suspicion?

EW1 Just a few days prior to the incident, his driver's license was just reinstated for a DUI. Taking down a live electrical wire and just not, failing to report it and not report it to anybody, led me to believe that he had also [sic] something to hide as well.

. . . .

EL [Employer's Lawyer] Yes. The issue here, I just want to preface that there's an issue as was stated by the Referee is why did we send him. You've testified you had no personal contact with him. So I'm going to ask you what was in your mind at the time that set you, where you decided I have to send this guy for a drug test? Okay. So you already answered two things. You said the live wire and you said the recent return to work from a DUI. Were there any other things that were on your mind at the time?

EW1 Yes. [Claimant] also was observed getting out of the truck, removing the wire, the live electrical wire off the truck, throwing it to the ground, looking around, and got in his truck and drove away.

. . . .

EL      Can you tell us where you got the information from?

EW1 I received that information from the Par[k]s Superintendent, which was Rick Goldsmith. I got the phone call from him saying that his employees observed [Claimant] getting out of the truck, removing the wire off the truck, throwing it on the ground. [Claimant] then looked around to see who was in the area, got in the truck and proceeded to drive away. After gathering all that information I followed up with one of my Supervisors. I asked him to run a GPS report to verify whether or not that was [Claimant] at the time of the incident. So with all that, after gathering all that information [and] after we verified it was [Claimant,] I had reasonable suspicion that he had

something to hide. He did – not only did he jeopardize his own safety but he jeopardized the safety of the public. Those are all duties that I'm obligated as Bureau Manager to enforce, to make sure nobody's safety is being jeopardized or I could also, I also have to provide a safe work environment for my employees as well.

R.R. at 12-14.

This testimony supports the conclusion that Employer had reasonable suspicion to believe there had been alcohol usage by Claimant. As a result of Employer's reasonable suspicion, Claimant was given a breathalyzer.[6] Pursuant to Employer's Policy .02g/210l is the threshold alcohol level. R.R. at 66a; Ex. E-1. Claimant's alcohol level was .057g/210l. C.R. Item No. 3, Ex. E-8. Thus, Claimant failed his alcohol test. Accordingly, because Employer had an established substance abuse policy and Claimant failed a test in accordance with Employer's policy, Claimant is ineligible for UC benefits under Section 402(e.1) of the Law. *Turner.*

Claimant next contends that Shahda's admission that Claimant was tested because of his past history precludes a finding of ineligibility of UC benefits under Section 402(e.1) of the Law. We disagree.

The law is well established that:

[T]he [UCBR] is the ultimate fact-finder in unemployment compensation matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. **It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made.** Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal.

---

[6] Claimant was given three tests because the policy requires two tests and during the second test Claimant's breath was undetectable, requiring a third test. The results of the last test given are the results Employer uses to determine an employee's alcohol level. *See* R.R. at 51a.

7

*Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted; emphasis added). This Court has explained:

> Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, in this case, the Employer, giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

> Here, the UCBR made the following findings of fact:
>
> 10. [E]mployer has a policy that allows it to subject an employee to breath or blood alcohol testing for the presence of alcohol where there is reasonable suspicion to believe that there has been alcohol usage.
>
> 11. One of the bases for reasonable suspicion is 'unusual behavior' by the employee.
>
> 12. [Shahda] made the decision to have [C]laimant tested because he believed that the circumstances of the accident and the allegation that [C]laimant had left the scene without reporting it all indicated 'unusual behavior.'

UCBR Dec. at 3; R.R. at 3a. Shahda's testimony, as recited above, is relevant evidence to support the conclusion that Claimant was tested because Shahda had "reasonable suspicion to believe based on specific and immediate physical, behavioral or performance . . . [that Claimant] probabl[y] . . . [partook in] alcohol us[ag]e." R.R. at 62a; Ex. E-1. Consequently, since the UCBR's findings of fact are supported by substantial evidence, Shahda's additional testimony regarding Claimant's past history is irrelevant.

8

Lastly, Claimant asserts that the evidence does not support an inference that Claimant was intoxicated at work because "there was no foundation for the test results, [] no unit explained for the number reported, and no subjective evidence of alcohol intoxication was [admitted] into evidence." Claimant Br. at 18 (uppercase and bold emphasis omitted). We disagree.

First, Employer's Policy explains:

**ALCOHOL TESTING**

Threshold

**.02** Alcohol Concentration*

*Alcohol concentration refers to the concentration of alcohol in a person's . . . breath. When expressed as a percentage, it means . . . **grams of alcohol per 210 liters of breath**.

R.R. at 66a (emphasis added); Ex. E-1. Moreover, Claimant's Alcohol Testing Form (ATF) admitted into evidence reflects that on "2/27/14" at "12:40" Claimant's "G/210L" was ".067". C.R. Item No. 3, Ex. E-8, Test No. 224. On "2/27/14" at "13:04" Claimant's "G/210L" was ".000 BLANK". C.R. Item No. 3, Ex. E-8 Test No. 225. On "2/27/14" at "15:08" Claimant's "G/210L" was ".057". C.R. Item No. 3, Ex. E-8 Test No. 226. Clearly, Employer's Policy and Claimant's ATF is substantial evidence that Claimant's alcohol level was over Employer's threshold limit. Therefore, as Claimant failed an alcohol test in accordance with Employer's Policy, Claimant is ineligible for UC benefits under Section 402(e.1) of the Law.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Kohler,                          :
                    Petitioner           :
                                         :
          v.                             :
                                         :
Unemployment Compensation                :
Board of Review,                         :    No. 962 C.D. 2015
                    Respondent           :

## O R D E R

AND NOW, this 21st day of April, 2016, the Unemployment Compensation Board of Review's May 27, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge