# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Seymour Jeck,                                    :
                          Petitioner             :
                                                 :
            v.                                   :    No. 420 C.D. 2020
                                                 :    Submitted:  October 23, 2020
Workers' Compensation Appeal                     :
Board (SRIG Inc.),                               :
                          Respondent             :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE P. KEVIN BROBSON, Judge[1]
            HONORABLE CHRISTINE FIZZANO CANNON, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED: May 14, 2021**


Seymour Jeck (Claimant) petitions for review of an Order of the Workers' Compensation Appeal Board (Board) affirming a Workers' Compensation Judge's (WCJ) August 28, 2019 Decision (Decision) denying Claimant's Petition to Review Compensation Benefits/Compensation Benefit Offset (Review Petition) and related Petition for Penalties (Penalty Petition).  The Petitions are based on *Whitmoyer v. Workers' Compensation Appeal Board (Mountain Country Meats)*, 186 A.3d 947 (Pa. 2018) (*Whitmoyer*), which held that future payments of medical benefits are not subject to subrogation under Section 319 of the Workers' Compensation Act (Act).[2]

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671.

The Board affirmed the WCJ's determination that *Whitmoyer* does not apply to the September 26, 2014 Third-Party Settlement Agreement (TPSA) between Claimant and SRIG Inc. (Employer), reasoning that Employer had expressly retained its right to subrogation for the payment of ongoing medical expenses. By finding *Whitmoyer* inapplicable to the TPSA, the WCJ's Decision approved Employer's taking of subrogation credit against Claimant's medical benefits after June 19, 2018.

On appeal, Claimant contends that, under *Whitmoyer,* Employer is no longer permitted to subrogate future medical expenses against third-party settlements and asks for penalties against Employer. Consistent with recent decisions of this Court in *Beaver Valley Slag, Inc. v. Workers' Compensation Appeal Board (Marchionda)*, ___ A.3d ___ (Pa. Cmwlth., Nos. 867 and 901 C.D. 2020, March 10, 2021), and *Todd v. Workers' Compensation Appeal Board (Fastrack Construction Inc.)* (Pa. Cmwlth., No. 505 C.D. 2020, filed March 23, 2021),[3] we find that the parties' deviation from the boilerplate language in the Department of Labor and Industry (Department), Bureau of Workers' Compensation's LIBC-380 form did not grant Employer subrogation rights to which it was not already entitled and that Claimant properly raised this issue. We therefore vacate the Board's Order to the extent that it determined that *Whitmoyer* does not apply to the TPSA and permitted Employer to continue taking its subrogation credit and we remand the matter for further proceedings. We affirm the denial of Claimant's Penalty Petition because it was unclear how, if at all, *Whitmoyer* would apply to third-party settlement agreements executed prior to that decision.

---

[3] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported opinion of this Court, while not binding, may be cited for its persuasive value.

## I. Background

In December of 2012, Claimant was injured in a motor vehicle accident during the course and scope of his employment. (WCJ Decision, Finding of Fact (FOF) ¶ 2.) Employer issued a Notice of Compensation Payable (NCP), recognizing Claimant's injury as a concussion and cervical and lumbar sprains, (Board Opinion (Op.) at 1), and began paying temporary total disability benefits, (FOF ¶ 2). In 2016, a WCJ expanded the description of Claimant's injury "to include post-concussional syndrome, post-traumatic vision disorder, vestibular disorder, cognitive loss and depression, cervical radiculopathy, cervical myositis with strain and sprain, occipital headaches, and aggravation of lumbar radiculopathy and left displaced femoral neck fracture and total left hip arthroplasty." (Board Op. at 1.)

Following his receipt of a third-party recovery in the amount of $400,000, Claimant executed the TPSA on September 26, 2014. (Reproduced Record (R.R.) at 10a-11a.) Pursuant to Section 121.18(a) of the Department's Regulations,[4] the parties utilized a Department form, LIBC-380, to memorialize the terms of the TPSA, which in part calculated the distribution of proceeds from Claimant's third-party recovery "[i]n accordance with [S]ection 319 of the [Act]." (*Id*. at 11a (citing 77 P.S. § 671).) Employer's accrued workers' compensation (WC) lien for previously paid indemnity and medical benefits totaled $182,883. (*Id*.) This amount was reduced to $105,606 after deduction of Employer's proportionate share of litigation expenses incurred in obtaining the third-party recovery. (*Id*.) Claimant's balance of recovery, after deduction of Employer's accrued lien, totaled $217,117. (*Id*.) This sum represented the amount of Employer's accrued subrogation interest.

---

[4] 34 Pa. Code § 121.18(a) (stating that a LIBC-380 "shall be executed" "[i]f an employee obtains a third-party recovery under [S]ection 319 of the [A]ct").

(*Id*.)  Going forward, Employer was responsible for 42% of Claimant's "future weekly benefits and medical expenses[,]" until the $217,117 subrogation interest was exhausted.  (*Id*.)

In addition, in the section of the LIBC-380 titled "Further Matters Agreed Upon," the TPSA provides that Employer's insurer

> agrees to accept $95,000, in lieu of the [$105,606] stated in box [no.] 7 [(Employer's net lien)], in full satisfaction of its lien to date. [Employer's insurer] will exercise a future credit as outlined in [box nos.] 8 & 9.

(*Id*.)  Box no. 8 includes Employer's reimbursement rate on future compensation liability – 42%.  (*Id*.)  Box no. 9 states that "Employer/Insurer is responsible for 42% [] of any future weekly benefits and medical expenses to satisfy its obligation to reimburse its pro rata share of [Claimant's] fees and expenses until the subrogation interest is exhausted:  $217,117 [].  Thereafter, Employer/Insurer is responsible for 100% of any compensation liability."  (*Id*.)  Thus, according to the language in the "Further Matters Agreed Upon" section, Claimant satisfied Employer's $105,606 accrued WC lien upon payment of $95,000.  In exchange for waiving its right to immediate payment of the remaining balance of $10,606, Employer retained its right to subrogate Claimant's future benefits and medical expenses until the balance of recovery – $217,117 – was exhausted.

Several years later, in February of 2018, the parties executed a compromise and release (C & R) agreement, which a WCJ approved.  (*Id*. at 27a-37a.)  The C & R agreement resolved all issues related to Claimant's receipt of indemnity benefits by means of a $60,000 lump sum payment, the proceeds of which would be added to the total amount of Employer's accrued WC lien.  (*Id*. at 33a.)  Employer "remain[ed] responsible for the payment of past and future . . . medical benefits[,]"

4

and expressly "retain[ed] all rights of subrogation with respect to any recovery made by [Claimant] in any third[-]party action stemming from the work injury."  (*Id*.)

Shortly thereafter, on June 19, 2018, our Supreme Court decided *Whitmoyer*, wherein it ruled that an employer's right to subrogation under Section 319 of the Act[5] for payment of "future instal[l]ments of compensation" does not include a claimant's future medical expenses.  *Whitmoyer*, 186 A.3d at 949.  Thus, under *Whitmoyer*, an employer could no longer assert its subrogation interest, the amount of the third-party recovery remaining after its net accrued lien had been reimbursed, against a claimant's future medical expenses thereby requiring the employer to pay the full amount of those expenses.

In response to *Whitmoyer*, on December 6, 2018, Claimant filed the Review Petition, requesting that the WCJ review the TPSA and stop Employer from continuing to take a future subrogation credit against Claimant's ongoing medical benefits.  (R.R. at 1a.)  In his Review Petition, Claimant argued that, pursuant to *Whitmoyer*, Employer's "[WC] insur[er] should be paying 100% of [] Claimant's ongoing medical benefits" and that the WCJ should institute that change as of June 19, 2018.  (*Id*.)  In his Penalty Petition, Claimant requested "penalties at the rate of . . . 50%[] on all past due medical bills" given Employer's "fail[ure] to comply with

---

[5] Section 319 of the Act states:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, **the employer shall be subrogated to the right of the employe[e] . . . against such third party to the extent of the compensation payable under this article** by the employer . . . .  Any recovery against such a third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe[e] . . . and shall be treated as an advance payment by the employer on account of any future instal[l]ments of compensation.

77 P.S. § 671 (emphasis added).

. . . [*Whitmoyer*] and pay 100% of [] Claimant's ongoing work[-]related medical expenses." (*Id*. at 5a.)

The WCJ found *Whitmoyer* inapplicable to the TPSA. (FOF ¶ 12.) The WCJ reasoned that, unlike in *Whitmoyer*, here Claimant did not "raise[] or preserve[] the issue that [E]mployer was not entitled to the lien against future medical benefits, either at the time the [TPSA] was entered into or during subsequent litigation." (*Id*.) Instead, "Claimant raised the issue and filed his [Review and Penalty Petitions] only after the Supreme Court decided *Whitmoyer*." (*Id*.) In addition, the WCJ found it "significant that [Employer] waived part of its subrogation lien with the understanding that it would be entitled to a future lien against medical benefits; the waiver constitutes separate consideration beyond the obligation of [Employer] with respect to the [TPSA]." (*Id*.) Last, the WCJ noted that *Whitmoyer* is a case of statutory interpretation and not a case holding Section 319 of the Act unconstitutional, and the decision is silent about whether it applies retroactively. (*Id*.)

Claimant appealed, and the Board affirmed, holding that *Whitmoyer* "should not invalidate the otherwise valid prior [TPSA]." (Board Op. at 5.) Specifically, the Board reasoned that "[t]his case is not controlled by *Whitmoyer* because here[] there was an agreement that the future credit against medical expenses would be taken in return for a reduction in the immediate lien[,]" whereas in *Whitmoyer*, "the parties, not including the claimant's counsel, executed the LIBC-380 boilerplate form and there was no meeting of the minds as to a credit for medical expenses . . . ." (*Id*. at 4.) The Board stated that "[t]he fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties," and here "Claimant specifically bargained for the credit which he now says is not due and owing." (*Id*.

6

at 5.) In addition, the Board stated that Claimant's claim "was not 'in the pipeline' at the time of the Supreme Court's determination [in *Whitmoyer*]." (*Id*. at 4.) Claimant petitioned for this Court to review the Board's Order.[6]

## II. Parties' Arguments

Claimant argues that the Board erred because, pursuant to *Whitmoyer*, "employers are no longer permitted under the [Act] to take subrogation reimbursement for future medical expenses against third-party settlements[,]" including those executed prior to June 19, 2018, the date *Whitmoyer* was decided. (Claimant's Brief (Br.) at 12 (emphasis omitted).) Claimant contends that, in distinguishing *Whitmoyer* from this case, the WCJ misstated certain facts about *Whitmoyer*. (*Id*. at 10, 15.) Moreover, Claimant takes the position that the "Supreme Court's interpretation of statutory terms takes priority over any features, including linguistic features, of an individual third-party settlement agreement." (*Id*. at 10.) Specifically, Claimant points out that in *Whitmoyer*, the Supreme Court stated that "because we granted allocatur to determine the meaning of a statutory term, the parties' arguments that are specific to the TPSA . . . , rather than to the language of the statute, are unavailing." (Claimant's Br. at 15 (quoting *Whitmoyer*, 186 A.3d at 957) (emphasis omitted).) Claimant further maintains that principles of contract law should not override *Whitmoyer's* change in the law because "settlements made under the [Act] are unique in that they are tightly managed[,] and compromise and releases require a judge to determine that a claimant understands the deal and to approve it." (*Id*. at 16.) According to Claimant, WC settlements "are not simply the products of

---

[6] This Court's "review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

contract law." (*Id.*) Last, Claimant argues that *Whitmoyer* announced a new rule of law and that "it is well settled that retroactive application of a new rule of law is a matter of judicial discretion." (*Id.* (citing *Dist. Off. of Disciplinary Counsel v. Surrick*, 749 A.2d 441 (Pa. 2000).))

Employer responds that *Whitmoyer* is readily distinguishable from the present case. (Employer's Br. at 10.) Specifically, Employer points out that, in *Whitmoyer*, "neither the [c]laimant nor counsel agreed to sign the third-party settlement agreement and . . . counsel for [the claimant] made clear his position that the lien would not apply to future medical[] [benefits.]" (*Id.*) Here, in contrast, Claimant "never took a position that medical[] [benefits] were not subject to the subrogation lien." (*Id.* at 11.) In fact, stresses Employer, "the [TPSA] providing for a lien against future medical obligations was signed and additional language reflecting Claimant's understanding of the ongoing entitlement of the [insurance] carrier to exert its subrogation lien was incorporated as part of the [TPSA]." (*Id.* at 11-12 (emphasis omitted).)

In addition, Employer contends that the TPSA in this case is unique because, in the section of the LIBC-380 form titled "Further Matters Agreed Upon," "[Employer] waived its entitlement to $10,606 of its net lien" and, in consideration thereof, "Claimant agreed to [Employer's] continued right to exercise subrogation against future medical[] [benefits] incurred by Claimant." (*Id.* at 12.) Employer claims that its agreement to forgo $10,606 of its net lien "was separate consideration above and beyond [its] obligation [] with respect to the [TPSA]" and its concession enabled Claimant to settle his third-party case. (*Id.* (emphasis omitted).)

Employer also argues that the doctrines of technical res judicata and laches apply and that, pursuant to those doctrines, Claimant's appeal should be dismissed.

8

(*Id*. at 12-13.) Employer contends that, though Claimant had the opportunity in other proceedings before a WCJ, he failed to raise the issue "that [Employer] was not entitled to the lien against future medical [benefits] . . . ," and, as such, has waived those claims under technical res judicata. (*Id*. at 15.) Moreover, Employer submits that laches applies here because the TPSA was executed in 2014 and "Claimant waited [four] years to challenge the application of the subrogation lien to payment of medical benefits incurred by Claimant." (*Id*. at 16.) According to Employer, it would be prejudiced if compelled to disgorge the credit it took "after [four] years of asserting its agreed to subrogation lien against future medical [benefits]." (*Id*. at 16-17.)

Last, Employer maintains that *Whitmoyer* does not retroactively apply based on *Blackwell v. State Ethics Commission*, 589 A.2d 1094 (Pa. 1991) (*Blackwell II*). (*Id*. at 19.)[7] According to Employer, under *Blackwell II*, *Whitmoyer's* applicability to the TPSA turns on whether Claimant raised and preserved a challenge to Employer's subrogation right to future medical benefits under Section 319 of the Act. (*Id*.) Because "there was no pending litigation or appeal challenging the applicability of Section 319 to the lien against medical [benefits] at the time *Whitmoyer* was decided[,]" Employer argues that *Whitmoyer* does not apply retroactively to the TPSA here. (*Id*.)

---

[7] Although Employer is arguing against retroactive application of *Whitmoyer* under the *Blackwell II* standard, it provided the citation for the initial decision, *Blackwell v. State Ethics Commission*, 567 A.2d 830 (Pa. 1989) (*Blackwell I*).

9

## III.    Discussion

### A. Whether Claimant is Entitled to Application of Whitmoyer.

As a threshold matter, we first address Employer's contentions that Claimant is not entitled to *Whitmoyer's* change to the prevailing interpretation of Section 319 of the Act because Claimant did not challenge Employer's subrogation right to future medical benefits prior to that decision. Only if Claimant is entitled to the change in the law must we address whether *Whitmoyer* applies to the TPSA. First, it is important to clarify that Claimant's Review Petition did not request that the WCJ apply *Whitmoyer* retroactively to the date the TPSA was executed, September 26, 2014. Rather, Claimant seeks relief from his obligation to pay any future medical benefits as of the date *Whitmoyer* was decided, June 19, 2018. (R.R. at 1a.) Before this Court, Employer's assertion regarding technical res judicata[8] and its argument, based on *Blackwell II*,[9] that *Whitmoyer* does not apply retroactively, seem to merge

---

[8] Pursuant to the doctrine of technical res judicata, "when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded." *Weney v. Workers' Comp. Appeal Bd. (Mac Sprinkler Sys., Inc.)*, 960 A.2d 949, 954 (Pa. Cmwlth. 2008) (quoting *Henion v. Workers' Comp. Appeal Bd. (Firpo & Sons, Inc.)*, 776 A.2d 362, 365 (Pa. Cmwlth. 2001)). In order for technical res judicata to apply, there must be: "(1) identity of the thing being sued upon or for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued." *Id.* (quoting *Henion*, 776 A.2d at 366). Technical res judicata may be applied to bar "claims that were actually litigated as well as those matters that **should have been** litigated." *Id.* (emphasis in original).

[9] In *Blackwell II*, our Supreme Court resolved the question of whether its earlier decision, *Blackwell I*, which announced a new rule of law, applied retroactively by considering three factors set forth by the United States Supreme Court: "(1) the purpose to be served by the new rule, (2) the extent of the reliance on the old rule, and (3) the effect on the administration of justice by the retroactive application of the new rule." *Blackwell II*, 589 A.2d at 1099. The *Blackwell II* Court held that its earlier decision applied retroactively and, discussing the third factor, stated that retroactive application of the new rule "has a limited effect on the operations of the various agencies, boards[,] and commissions in that our retroactive application is restricted to the instant case and all cases pending at the time of our [earlier] decision . . . in which the [issue in dispute] was properly raised and preserved." *Id.* at 1099-1100.

10

into the singular contention that because Claimant did not raise and preserve a challenge to Employer's subrogation right to future medical benefits under Section 319 of the Act prior to the decision in *Whitmoyer*, Claimant is not entitled to the benefit of the change in the law. Our recent precedent holds otherwise.

In *Beaver Valley*, this Court held that the claimant, who had sought review of the employer's subrogation credit of the claimant's third-party recovery by filing a review petition two months after *Whitmoyer* was decided, "preserved the issue of *Whitmoyer's* application to the [third-party settlement agreement] by raising it at the earliest point." *Beaver Valley*, __ A.3d at __, slip op. at 11. As in this case, the employer in *Beaver Valley* argued that because the third-party settlement agreement was final, and no litigation or appeals were pending in the matter at the time *Whitmoyer* was decided, the claimant was not entitled to the benefit of the change in the law. *Id.* at __, slip op. at 5. We stated, however, that "because [the c]laimant [was] still receiving disability compensation," the third-party settlement agreement "was not a final resolution of the claim" and thus Section 413(a) of the Act[10] permitted the WCJ to review and modify or set aside the third-party settlement agreement upon petition filed by either party. *Id*. at __, slip op. at 11.

Unlike here, the claimant in *Beaver Valley* argued that "granting a review petition under Section 413(a) of the Act requires that correction of the erroneous

---

[10] Section 413(a) provides:

> **A [WCJ] may, at any time, review and modify** or set aside a[n] [NCP] and an original or supplemental **agreement** or **upon petition filed by either party** with the [D]epartment, or in the course of the proceedings under any petition pending before such [WCJ], if it be proved that such [NCP] or agreement was in any material respect incorrect.

77 P.S. § 771 (emphasis added).

agreement be effective as of the date of the error's creation." *Id*. at __, slip op. at 6. While this Court in *Beaver Valley* disagreed that *Whitmoyer* "applied retroactively to the date of the [third-party settlement agreement's] origination[,]" we held that, because our

> Supreme Court interpreted that portion of Section 319 of the Act for the first time in *Whitmoyer*, such that the [third-party settlement agreement's] terms were not known to be materially incorrect until *Whitmoyer* was decided, and [the claimant] preserved the issue of *Whitmoyer's* application to the [third-party settlement agreement] by raising it at the earliest point, [the claimant] is entitled to the benefit of the ruling as of the date *Whitmoyer* was decided.

*Id*. at __, slip op. at 11. Here, Claimant filed his Review Petition on December 6, 2018, which is shortly after *Whitmoyer* was decided on June 19, 2018. Consistent with our decision in *Beaver Valley*, Claimant is entitled to the benefit of the change in the law created by *Whitmoyer*, and he did not waive his challenge to Employer's subrogation right to future medical benefits under Section 319 of the Act simply because there was no appeal "in the pipeline" at the time *Whitmoyer* was decided. (Board Op. at 4.) Moreover, we are not persuaded by Employer's technical res judicata argument because it is premised on the notion that Claimant **should have** challenged Employer's entitlement to subrogate when the TPSA was executed or during prior WC litigation between the parties. However, in light of our decision in *Beaver Valley*, we cannot say that Claimant had to have challenged Employer's right to subrogate future medical benefits before *Whitmoyer* was decided, when the relevant terms of the TPSA "were not known to be materially incorrect" before then. *Beaver Valley*, __ A.3d at __, slip op. at 11.

Moreover, we do not find the doctrine of laches applicable to the instant matter. Having filed his Review Petition shortly after *Whitmoyer* was decided,

Claimant in this case did not "greatly delay[] enforcing [his] rights." (Employer's Br. at 15.) Although Employer asserts "[i]t would cause great prejudice to compel [Employer] to pay back" Employer's subrogation credit taken against Claimant's medical benefits "after [four] years of asserting its . . . subrogation lien . . . ," (*id.* at 16-17), Employer mischaracterizes Claimant's position. Claimant is not seeking retroactive application of *Whitmoyer* to September 26, 2014, and, therefore, Employer is not being asked to pay back four years of the credit it has taken pursuant to the TPSA.

### B. Whether Whitmoyer Applies to the TPSA Here.

Claimant argues that this case is indistinguishable from *Whitmoyer* and thus the terms of the TPSA must be set aside to the extent they conflict with *Whitmoyer's* holding that Section 319 of the Act does not permit subrogation of future medical expenses. In contrast, Employer contends that *Whitmoyer* is distinguishable because, unlike in *Whitmoyer*, the TPSA executed here includes language beyond the boilerplate terms of the LIBC-380 form and specifies that Employer gave up part of its accrued lien in return for a right to subrogate Claimant's future medical benefits.

In *Whitmoyer*, the Supreme Court observed that Section 319 of the Act "addresses two distinct scenarios." *Whitmoyer*, 186 A.3d at 954. In the first, an employer has a claim against a claimant's third-party recovery for indemnity benefits and medical expenses it paid "to the date of the third-party recovery . . . ." *Id.* (internal citations omitted). This claim constitutes the employer's accrued lien and is payable immediately upon recovery. *Id.* "The second scenario relates to the disposition of the net settlement proceeds" – the amount of the claimant's recovery remaining after deducting his employer's accrued lien. *Id.* This "'excess' recovery"

13

is to be paid to the claimant "as 'an advance payment by the employer on account of future instal[l]ments of compensation,'" which the Supreme Court concluded in *Whitmoyer* would be limited to the payment of indemnity benefits. *Id*. at 956 (quoting 77 P.S. § 671). Therefore, an employer whose accrued lien is satisfied at the time of a third-party settlement may not seek reimbursement for future medical expenses from an employee's balance of recovery. *Id.* at 957.

This Court recently addressed the issue of *Whitmoyer's* applicability to third-party settlement agreements executed prior to the date of that decision in *Hoss v. Workers' Compensation Appeal Board (Select Staffing)* (Pa. Cmwlth., No. 241 C.D. 2020, filed February 25, 2021). In *Hoss*, the claimant argued that *Whitmoyer's* "interpretation of Section 319 overrides the terms of a third-party settlement agreement and that he and all other similarly[]situated claimants should receive relief upon filing a review petition to stop the unlawful taking of credit against ongoing medical benefits." *Id.*, slip op. at 7. The parties' third-party settlement agreement listed a third-party recovery of $187,500, expenses of recovery of $85,925.65, and an accrued WC lien of $472,688.47. *Id.*, slip op. at 3. Furthermore, terms written into the section of the third-party settlement agreement titled "Further Matters Agreed Upon" provided that "[the e]mployer's insurer agreed to reimbursement of the [WC] lien at the discounted rate of $50[,]878.17, in exchange for a credit for future medical benefits of [the claimant] that may have come due in the future in the amount of $50,787.17, the sum [the claimant] received from the third[-]party claim." *Id*. (internal quotations omitted). The parties subsequently executed a separate agreement regarding the claimant's third-party recovery the terms of which were not materially different from the terms of their third-party settlement agreement. The Court "conclude[d] that *Whitmoyer* d[id] not apply to

14

prohibit [the e]mployer from taking the agreed-upon credit for [the c]laimant's ongoing medical expenses" because "there was no excess recovery owed to [the c]laimant[,]" as the employer's accrued subrogation lien "well exceeded [the c]laimant's third-party recovery." *Id.*, slip op. at 8-9. We elaborated that

> while [the] [e]mployer is taking a credit for ongoing medical expenses, it is not against any "excess" recovery paid to [the c]laimant in contravention of Section 319 as interpreted by *Whitmoyer*. Rather, [the e]mployer is taking the credit against the funds from the third-party settlement that, but for the terms of the settlement agreements [the c]laimant now seeks to invalidate, [the e]mployer was initially entitled to receive. We do not read *Whitmoyer* to prohibit such an agreement, whereby the payment to an employer for its accrued lien is reduced in exchange for a credit toward future medical benefits in the amount of the reduction.

*Id.* at 5.

Subsequently, in *Beaver Valley*, this Court held that *Whitmoyer* applied to the parties' third-party settlement agreement. The claimant in *Beaver Valley* sustained a severe injury during the course of his employment, and the employer accepted the work injury through an NCP. *Beaver Valley*, __ A.3d at __, slip op. at 2. The claimant was adjudicated incapacitated, and his guardian received a third-party recovery in the amount of $10,450,000 on his behalf. *Id.* Of that recovery, $1,099,600 was allocated to the employer to satisfy its accrued WC lien, $3,519,136 reflected the attorney's fees and other costs associated with obtaining the third-party recovery, and $8,794,377 represented the balance of recovery. *Id.* at ___, slip op. at 2-3. Pursuant to the third-party settlement agreement, the employer was responsible for 33.7% of the claimant's future WC compensation benefits and medical expenses "in order to reimburse its pro rata share of [the c]laimant's fees and expenses until exhaustion of [the employer's] subrogation interest in the amount of $8,794,337." *Id.* at___, slip op. at 3. We held that "[b]ecause under *Whitmoyer*, [the e]mployer is

15

not permitted to seek reimbursement for future medical expenses from the employee's balance of recovery, the WCJ was permitted to set aside that portion of the [third-party settlement agreement]." *Id*. at___, slip op. at 6.

Most recently, in *Todd*, a decision similar to the instant matter, the parties executed a compromise and release agreement, which resolved all issues regarding the claimant's indemnity benefits through a $195,000 payment. The employer agreed to pay for the claimant's ongoing medical treatment and retained its "full subrogation rights" for, *inter alia*, "all ongoing medical expenses." *Todd*, slip op. at 2. Approximately two months after executing the compromise and release, the parties executed a third-party settlement agreement. Like the TPSA in the instant matter, the third-party settlement agreement in *Todd* included terms beyond the boilerplate terms of the LIBC-380 form; in *Todd*, the employer agreed to waive its right to $52,517.20 of its accrued subrogation lien in exchange for the right to a credit in this amount against the claimant's future medical expenses. *Id.*, slip op. at 5. We held that *Whitmoyer* applied because the provisions contained in the parties' compromise and release and third-party settlement agreements "did not grant [the e]mployer subrogation rights to which it was not already entitled." *Id.*, slip op. at 9. However, remand to the WCJ was necessary to determine whether the employer's accrued subrogation lien had been satisfied. *Id.*, slip op. at 10-11. Our disposition in *Todd* was consistent with our interpretation of *Whitmoyer* in *Hoss*, which is that, while *Whitmoyer* prevents an employer from taking a credit for ongoing medical expenses against a claimant's excess recovery, *Whitmoyer* does not prevent an employer from taking a credit for ongoing medical expenses in order to satisfy the balance of its accrued subrogation lien.

16

In this case, the proceeds of Claimant's $400,000 third-party recovery exceeded Employer's accrued lien of $182,883, leaving Claimant with a balance of recovery in the amount of $217,117. (R.R. at 11a.) Prior to *Whitmoyer*, Employer had the unquestioned right to a credit against its payment of Claimant's future medical bills up to the amount of this balance of recovery. However, after *Whitmoyer*, this right no longer exists. The Board based its conclusion that *Whitmoyer* does not control this case in substantial part on the terms set forth in the section of the LIBC-380 form titled "Further Matters Agreed Upon," in which the parties memorialized their agreement "that the future credit against medical expenses would be taken [by Employer] in return for a reduction in the immediate lien." (Board Op. at 4.) Because the parties deviated from the boilerplate language in the LIBC-380 form, the Board determined that principles of general contract law compelled the conclusion that Employer's future subrogation rights were not extinguished by *Whitmoyer*, as "Claimant specifically bargained for the credit which he now says in not due and owing." (*Id*. at 5.)

Here, however, as in *Todd*, the parties' deviation from the boilerplate language in the LIBC-380 form did not grant Employer subrogation rights to which it was not already entitled. It is axiomatic that an employer's right to subrogation under Section 319 of the Act is "'statutorily absolute and can be abrogated only by choice.'" *Thompson v. Workers' Comp. Appeal Bd. (USF&G Co. & Craig Welding Equip. Rental)*, 781 A.2d 1146, 1152 (Pa. 2001) (quoting *Winfree v. Phila. Elec. Co.*, 554 A.2d 485, 487 (Pa. 1989)). Where a claimant's work injury is due to the negligent conduct of a third party, "there is a clear, justifiable right to subrogation under Section 319 of the Act." *Dale Mfg. Co. v. Bressi*, 421 A.2d 653, 654 (Pa. 1980).

17

Though Employer waived its right to immediately collect a portion of its accrued lien ($10,606), it expressly reserved a right to subrogate Claimant's future benefits and medical expenses until the balance of recovery – $217,117 – was exhausted, which, practically speaking, would operate to reimburse Employer for the amount of the accrued lien that it agreed to waive.[11] Thus, Employer's right to recover the entirety of its accrued lien was not terminated by the TPSA but was merely deferred. Critically, Employer's right to subrogate Claimant's future medical expenses originated, not with the terms set forth in the section of the LIBC-380 form titled "Further Matters Agreed Upon," but instead with the boilerplate terms contained in that form, which the parties were required to utilize under Section 218.19(a) of the Department's Regulations. Based on the formula contained in the LIBC-380, Employer was responsible for 42% of Claimant's "future . . . medical expenses" until Employer's subrogation interest in the amount of $217,117 was exhausted. (R.R. at 11a.) Claimant merely consented to Employer's retention of its existing subrogation rights, which at that time included future medical expenses. Accordingly, the additional terms set forth in the "Further Matters Agreed Upon" section of the TPSA do not render this case distinguishable from *Whitmoyer*.

We thus conclude that Employer is not entitled to subrogate Claimant's future medical expenses up to the excess recovery but can only recover ongoing medical expenses in order to satisfy the balance of its accrued subrogation lien. However, on this record, we are unable to determine whether or not Employer has been fully reimbursed its accrued subrogation lien. Before the WCJ, Employer argued that "[it] should at least be able to offset future medical against the amount that . . . [Employer] waived on [its] accrued lien in the underlying third-party case." (C.R. Item 14,

---

[11] In essence, the TPSA enabled Claimant to keep an additional $10,606 because Claimant had to pay Employer $95,000 rather than $105,606.

Hearing Transcript at 6.) We agree.[12]  However, there are no findings as to the amounts that Employer has recovered through subrogation to date.  We therefore remand to the WCJ to make this determination.

### C. Penalty Petition.

Claimant requests that this Court remand this matter to the WCJ for calculation of a penalty, which Claimant argues is appropriate because "Employer continued to take subrogation against [] Claimant's medical benefits after the issuance of *Whitmoyer*" in violation of the Act.  (Claimant's Br. at 18.)  However, while we hold that *Whitmoyer* applies to the TPSA, we discern no error in the denial of Claimant's Penalty Petition.[13]  Prior to *Whitmoyer*, this Court interpreted Section 319 of the Act as permitting employers to take a credit against medical expenses. *See Zacour v. Workers' Comp. Appeal Bd. (Mark Ann Indus.)*, 824 A.2d 336, 340 (Pa. Cmwlth. 2003).  After *Whitmoyer* changed the prevailing interpretation of Section 319 of the Act, there was justifiable confusion regarding whether *Whitmoyer* would apply to third-party settlement agreements executed prior to that decision. Considering that ambiguity, and particularly where, as here, the TPSA included additional language, we discern no error in denying the Penalty Petition.

---

[12] We note that the $60,000 lump sum indemnity payment Employer paid under the terms of the C&R was also "to be included in the amount of [Employer's WC] lien."  (R.R. at 33a.)

[13] The WCJ expressly denied Claimant's Penalty Petition.  While the Board did not specifically address that aspect of Claimant's appeal, its affirmation of the Penalty Petition's denial flowed from its affirmation of the denial of Claimant's Review Petition.  Although this Court's reason for affirming the Penalty Petition's denial is different than the Board's, "we may affirm an agency's decision 'on other grounds where grounds for affirmance exist.'"  *Turner v. Unemployment Comp. Bd. of Rev.*, 899 A.2d 381, 385 (Pa. Cmwlth. 2006) (quoting *Kutnyak v. Dep't of Corr.*, 748 A.2d 1275, 1279 n.9 (Pa. Cmwlth. 2000)).

**IV. Conclusion**

For the foregoing reasons, the Board properly affirmed the WCJ's Decision that Employer did not violate the Act. However, with respect to Claimant's Review Petition, we vacate the Board's Order and remand this matter for the Board to further remand to the WCJ, who shall conduct additional proceedings as necessary to determine the extent to which Employer's subrogation of Claimant's future medical benefits represents a reimbursement of Employer's accrued subrogation lien.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Seymour Jeck,                  :
              Petitioner         :
                               :
           v.                :    No. 420 C.D. 2020
                               :
Workers' Compensation Appeal      :
Board (SRIG Inc.),                :
              Respondent      :

## **O R D E R**

**NOW**, May 14, 2021, in accordance with the foregoing Memorandum Opinion, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED** in part and **VACATED** in part. This matter is **REMANDED** for further proceedings consistent with the foregoing Memorandum Opinion.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge